**ORAL ARGUMENT NOT YET SCHEDULED**

No. 21-5056
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

WISCONSIN VOTERS ALLIANCE, *et al.*,

*Appellees,*

v.

KAMALA D. HARRIS, Vice President, in her official capacity as
President of the United States Senate, *et al.*,

*Appellees*,

ERICK G. KAARDAL, ESQ. AND
MOHRMAN, KAARDAL & ERICKSON, P.A.,

*Appellants*.
_____

On Appeal from the United States District Court for the District of Columbia
No. 1:20-cv-03791
Hon. James E. Boasberg, U.S. District Judge
_____

**BRIEF OF COURT-APPOINTED *AMICUS CURIAE*
ADDRESSING STANDING TO APPEAL**

Matthew X. Etchemendy
Jeremy C. Marwell
Vinson & Elkins LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC  20037
Phone: 202.639.6740
Email: metchemendy@velaw.com
Email: jmarwell@velaw.com

September 28, 2021

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

Pursuant to D.C. Circuit Rule 28(a)(1), *amicus curiae* submits this certificate as to parties, rulings, and related cases.

### A.    PARTIES AND *AMICI*

Except for the following, all parties, intervenors, and *amici* appearing in this Court are listed in the Appellants' brief:

Matthew X. Etchemendy has been appointed by the court as *amicus curiae* to assist the Court by addressing whether Appellants have standing to appeal.

### B.    RULINGS UNDER REVIEW

References to the rulings at issue appear in the Appellants' brief.

### C.    RELATED CASES

The case on review has not previously been before this Court. *Amicus* is unaware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

Date: September 28, 2021                    Respectfully submitted,

*/s/ Matthew X. Etchemendy*
Matthew X. Etchemendy
Jeremy C. Marwell
Vinson & Elkins LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC  20037
Phone: 202.639.6740
Email: metchemendy@velaw.com
Email: jmarwell@velaw.com

i

# TABLE OF CONTENTS

**Page**

Certificate As To Parties, Rulings, And Related Cases.............................................i

Table Of Authorities .................................................................................................iv

Glossary ................................................................................................................ xiii

Counter-Statement Of Jurisdiction .........................................................................1

Statement Of The Issues ..........................................................................................1

Statutes, Rules, And Regulations.............................................................................2

Introduction..............................................................................................................2

Statement Of The Case ............................................................................................4

    I.      Legal Background: Regulation Of Practice In The District Court............4

    II.     Factual And Procedural Background ................................................7

Summary Of Argument ..........................................................................................11

Argument ...............................................................................................................13

    I.      Standard Of Review ................................................................................13

    II.     Legal Framework And Case Law On The Appealability Of Discipline-Related District Court Determinations ...................................14

    III.   Mr. Kaardal Meets The "Constitutional Minimum" Conditions For Article III Standing.....................................................................................22

         A.     The Referral Order Caused Mr. Kaardal A Legally Cognizable Injury For Article III Purposes. ...................................22

         B.     Mr. Kaardal's Injury Could Be At Least Partially Redressed By Vacating The Referral Order.....................................................31

    IV.   The District Court's Referral Order Is Not A "Final Decision" Over Which This Court Has Statutory Jurisdiction. ........................................32

         A.     The Referral Order Lacks The Normal Indicia Of Finality. ..........33

         B.     The Referral Order Lacks The Indicia Of An Appealable Judicial "Decision."........................................................................38

         C.     Practical Considerations Favor The Exclusion Of District Court Disciplinary Referrals From § 1291's Scope.......................42

     D.    The Foregoing Analysis Is Consistent With Precedent From Other Circuits. ................................................................48

Conclusion .................................................................................52

Certificate Of Compliance .......................................................53

Certificate Of Service................................................... *(after addendum)*

# <u>TABLE OF AUTHORITIES</u>

**Cases:**                                                 **Page(s)**

*Abbs v. Sullivan*,
963 F.2d 918 (7th Cir. 1992) ...............................................................46

*Adams v. Ford Motor Co.*,
653 F.3d 299 (3d Cir. 2011) ......................................... 21, 49, 50, 51

*Adams v. USAA Cas. Ins. Co.*,
863 F.3d 1069 (8th Cir. 2017) ...........................................................18

*Adkins v. Christie*,
227 Fed. Appx. 804 (11th Cir. 2007)................................................21

*Aka v. U.S. Tax Ct.*,
854 F.3d 30 (D.C. Cir. 2017) ..................................................... 15, 38

*Alexander v. United States*,
201 U.S. 117 (1906).............................................................................33

*Am. Clinical Lab'y Ass'n v. Azar*,
931 F.3d 1195 (D.C. Cir. 2019).........................................................15

*Am. Petroleum Inst. v. EPA*,
862 F.3d 50 (D.C. Cir. 2017)..............................................................32

*Anderson v. Carter*,
802 F.3d 4 (D.C. Cir. 2015)................................................................28

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006)............................................................................13

\* *Ayestas v. Davis*,
138 S. Ct. 1080 (2018)................................................................. 38, 39

*Baker Grp., L.C. v. Burlington N. & Santa Fe Ry.*,
451 F.3d 484 (8th Cir. 2006) ..................................................... 20, 48

*Bolte v. Home Ins. Co.*,
744 F.2d 572 (7th Cir. 1984) ..................................................... 17, 47

**\* Authorities on which we chiefly rely are marked with asterisks.**

iv

**Cases—Continued:**                                               **Page(s)**

\* *Brooks v. Laws*,
  208 F.2d 18 (D.C. Cir. 1953)....................................... 33, 38, 39

*Butler v. Biocore Med. Techs., Inc.*,
  348 F.3d 1163 (10th Cir. 2003) ........................................30

*California v. Rooney*,
  483 U.S. 307 (1987)........................................... 19, 46, 47

*Camreta v. Greene*,
  563 U.S. 692 (2011)............................................... 37, 47

*Clark Equip. Co. v. Lift Parts Mfg. Co.*,
  972 F.2d 817 (7th Cir. 1992) .............................................19

*Cobbledick v. United States*,
  309 U.S. 323 (1940)............................................... 35, 43

*Cohen v. Beneficial Indus. Loan Corp.*,
  337 U.S. 541 (1949)....................................................34

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980)....................................................47

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
  438 U.S. 59 (1978)....................................................16

*Foreman v. Wadsworth*,
  844 F.3d 620 (7th Cir. 2016) ...........................................16

\* *Foretich v. United States*,
  351 F.3d 1198 (D.C. Cir. 2003) ............................... 24, 28, 31

*Fourth Branch Assocs. (Mechanicville) v. FERC*,
  253 F.3d 741 (D.C. Cir. 2001)...........................................34

*Frank v. Crawley Petroleum Corp.*,
  992 F.3d 987 (10th Cir. 2021) .........................................16

*Fritz v. Honda Motor Co.*,
  818 F.2d 924 (D.C. Cir. 1987)...........................................16

**Cases—Continued:** **Page(s)**

*FTC v. Standard Oil Co.*,
  449 U.S. 232 (1980).................................................................. 34, 40

*Gul v. Obama*,
  652 F.3d 12 (D.C. Cir. 2011) ...........................................................28

*Harvey v. District of Columbia*,
  798 F.3d 1042 (D.C. Cir. 2015) .......................................................46

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010).........................................................................45

*Hilton Hotels Corp. v. Banov*,
  899 F.2d 40 (D.C. Cir. 1990) ..........................................................16

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013).................................................................. 14, 15

* *In re Application for Exemption from Elec. Pub. Access Fees*,
  728 F.3d 1033 (9th Cir. 2013) .................................................... 38, 39

*In re Application of Mosher*,
  25 F.3d 397 (6th Cir. 1994) ............................................................38

*In re Baker*,
  693 F.2d 925 (9th Cir. 1982) ..........................................................39

*In re Domestic Airline Travel Antitrust Litig.*,
  3 F.4th 457 (D.C. Cir. 2021)...........................................................15

*In re Goldstein*,
  430 F.3d 106 (2d Cir. 2005) .................................................. 21, 49, 50, 51

*In re Harris*,
  51 Fed. Appx. 952 (6th Cir. 2002)...................................................17

*In re Kershaw*,
  70 V.I. 859 (2019)..........................................................................49

*In re Metro. Gov't of Nashville & Davidson Cnty.*,
  606 F.3d 855 (6th Cir. 2010) ..........................................................21

**Cases—Continued:**                                                                **Page(s)**

*In re Williams*,
    156 F.3d 86 (1st Cir. 1998) ........................................ 17, 26, 47, 48, 50

*Jarkesy v. SEC*,
    803 F.3d 9 (D.C. Cir. 2015) ........................................................ 37, 43

*Keach v. Cnty. of Schenectady*,
    593 F.3d 218 (2d Cir. 2010) ........................................ 17, 18, 24, 51

*Kontrick v. Ryan*,
    540 U.S. 443 (2004) ................................................................... 14

*Lapides v. Bd. of Regents*,
    535 U.S. 613 (2002) ................................................................... 45

*Lucas v. Duncan*,
    574 F.3d 772 (D.C. Cir. 2009) ................................................... 40

*Mancuso v. Ind. Harbor Belt R.R.*,
    568 F.2d 553 (7th Cir. 1978) ..................................................... 32

*Manion v. Am. Airlines, Inc.*,
    395 F.3d 428 (D.C. Cir. 2004) ................................................... 16

*Marino v. Ortiz*,
    484 U.S. 301 (1988) ................................................................... 16

*Martinez v. City of Chicago*,
    823 F.3d 1050 (7th Cir. 2016) ................................................... 19

*McBryde v. Comm. to Rev. Circuit Council Conduct*,
    264 F.3d 52 (D.C. Cir. 2001) ............................................ 24, 26, 28

*McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*,
    298 U.S. 178 (1936) ................................................................... 14

*Metlife, Inc. v. Fin. Stability Oversight Council*,
    865 F.3d 661 (D.C. Cir. 2017) ................................................... 47

*Microsoft Corp. v. Baker*,
    137 S. Ct. 1702 (2017) ............................................................... 42

**Cases—Continued:**                                              **Page(s)**

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009) ......................................................................... 33, 34, 36, 43

*Montalto v. Miss. Dep't of Corr.*,
938 F.3d 649 (5th Cir. 2019) ............................................................... 19

*Nisus Corp. v. Perma-Chink Sys., Inc.*,
497 F.3d 1316 (Fed. Cir. 2007) ................................................... 16, 48

*Nsinano v. Barr*,
808 Fed. Appx. 554 (9th Cir. 2020) ................................................... 38

*Parsons v. U.S. Dep't of Justice*,
801 F.3d 701 (6th Cir. 2015) ............................................................... 24

*Pigford v. Veneman*,
369 F.3d 545 (D.C. Cir. 2004) ............................................................ 38

*Precision Specialty Metals, Inc. v. United States*,
315 F.3d 1346 (Fed. Cir. 2003) .......................................................... 17

*Pulphus v. Ayers*,
909 F.3d 1148 (D.C. Cir. 2018) .......................................................... 24

*Rempfer v. Sharfstein*,
583 F.3d 860 (D.C. Cir. 2009) ............................................................ 14

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
140 S. Ct. 582 (2020) .................................................................... 33, 34

*Ry. Lab. Execs.' Ass'n v. United States*,
987 F.2d 806 (D.C. Cir. 1993) ............................................................ 16

*Serv. Emps. Int'l Union Local 32BJ v. Preeminent Protective Servs. Inc.*,
997 F.3d 1217 (D.C. Cir. 2021) .......................................................... 15

*Sexual Minorities Uganda v. Lively*,
254 F. Supp. 3d 262 (D. Mass. 2017) ................................................. 47

*Sexual Minorities Uganda v. Lively*,
899 F.3d 24 (1st Cir. 2018) ................................................................. 47

**Cases—Continued:** Page(s)

*Seymour v. Hug*,
    485 F.3d 926 (7th Cir. 2007) ...............................................................19

*Sierra Club v. EPA*,
    292 F.3d 895 (D.C. Cir. 2002)...............................................................28

\* *Sullivan v. Comm. on Admissions & Grievances*,
    395 F.2d 954 (D.C. Cir. 1967)............................ 7, 11, 12, 13, 17, 18, 20, 22, 23,
                       24, 25, 26, 27, 28, 30, 31, 47, 50, 51

*Sundel v. United States*,
    985 F.3d 1029 (D.C. Cir. 2021) ...........................................................34

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)...............................................................................29

\* *Teaford v. Ford Motor Co.*,
    338 F.3d 1179 (10th Cir. 2003) ............................. 20, 29, 30, 31, 32, 41, 50, 51

*Tesco Corp. v. Nat'l Oilwell Varco, L.P.*,
    804 F.3d 1367 (Fed. Cir. 2015) ...........................................................17

\* *TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)............................................................ 26, 27, 29, 30, 31

*Turkish Coal. of Am., Inc. v. Bruininks*,
    678 F.3d 617 (8th Cir. 2012) ...............................................................24

*United States v. Carter*,
    995 F.3d 1214 (10th Cir. 2021) .................................................... 17, 25

*United States v. El-Mezain*,
    664 F.3d 467 (5th Cir. 2011) ...............................................................25

*United States v. Ensign*,
    491 F.3d 1109 (9th Cir. 2007) .............................................................17

*United States v. Llanez-Garcia*,
    735 F.3d 483 (6th Cir. 2013) ...............................................................19

**Cases—Continued:** **Page(s)**

*United States v. McHugh*,
  528 F.3d 538 (7th Cir. 2008) ...............................................41

*United States v. Pineyro*,
  112 F.3d 43 (2d Cir. 1997) ...............................................41

*United States v. Simpson*,
  430 F.3d 1177 (D.C. Cir. 2005) ...........................................48

*United States v. Sisson*,
  399 U.S. 267 (1970)......................................................45

*United States v. Talao*,
  222 F.3d 1133 (9th Cir. 2000) ...................................... 19, 47

*United States v. Wallace*,
  964 F.2d 1214 (D.C. Cir. 1992) ..........................................16

*United States v. Woodberry*,
  405 Fed. Appx. 840 (5th Cir. 2010)......................................21

*Walker v. City of Mesquite*,
  129 F.3d 831 (5th Cir. 1997) ............................................28

*Weeks v. Indep. Sch. Dist. No. I-89*,
  230 F.3d 1201 (10th Cir. 2000) .........................................31

*Weissman v. Quail Lodge Inc.*,
  179 F.3d 1194 (9th Cir. 1999) ...........................................4

* *Zente v. Credit Mgmt., L.P.*,
  789 F.3d 601 (5th Cir. 2015) ................................... 20, 21, 30, 50, 51

**Constitutional Provisions:**

U.S. Const. art. III, § 2 ........................................14

**Statutes:**

3 U.S.C. § 15 ...................................................7

* 28 U.S.C. § 1291 ................. 1, 3, 13, 15, 32, 33, 34, 35, 37, 38, 39, 41, 42, 44, 49

**Statutes—Continued:**                                                  **Page(s)**

28 U.S.C. § 1331 ................................................................................1

28 U.S.C. § 1651(a)...........................................................................48

**Rules:**

D.C. R. Prof. Conduct 3.1 ................................................................9

D.D.C. Local Civ. R. 83.2 to 83.20 ................................................4

D.D.C. Local Civ. R. 83.12(b) ........................................................4

D.D.C. Local Civ. R. 83.13..............................................................4

D.D.C. Local Civ. R. 83.13(a) ........................................................5

D.D.C. Local Civ. R. 83.14(a) ........................................................5

D.D.C. Local Civ. R. 83.14(b) ........................................................5

D.D.C. Local Civ. R. 83.14(d) ........................................................6

D.D.C. Local Civ. R. 83.15(a) ........................................................4

D.D.C. Local Civ. R. 83.16(d) ......................................................41

D.D.C. Local Civ. R. 83.16(d)(1) .......................................... 5, 41, 42

D.D.C. Local Civ. R. 83.16(d)(2) ...................................... 5, 35, 42, 44

D.D.C. Local Civ. R. 83.16(d)(3) ........................................... 5, 6, 40

D.D.C. Local Civ. R. 83.16(d)(7) ....................................................6

D.D.C. Local Civ. R. 83.16(d)(8) ....................................................6

Fed. R. App. P. 10...........................................................................43

Fed. R. App. P. 29(a)(4)....................................................................1

Fed. R. Civ. P. 63 ...........................................................................36

**Other Authorities:** **Page(s)**

15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* (2d ed., Apr. 2021 update) ................................... 15, 38

Answering Br. for Appellee, *Barr-Zvulun v. U.S. Tax Ct., Admissions Off.*, No. 20-1071 (D.C. Cir. Jan. 15, 2021) (Doc. 1880305), 2021 WL 147090.......38

Cass R. Sunstein, *What's Standing After* Lujan*? Of Citizen Suits, "Injuries," and Article III*, 91 Mich. L. Rev. 163 (1992) ......................................................23

*Complainant*, Black's Law Dictionary (11th ed. 2019) ..........................................40

D.C. Bar Rules of Pro. Conduct Rev. Comm., *Proposed Amendments to the District of Columbia Rules of Professional Conduct: Final Report and Recommendation* (2005), https://bit.ly/3zmOAvf ...............................................23

Elizabeth Rybicki & L. Paige Whitaker, Cong. Rsch. Serv., RL32717, *Counting Electoral Votes: An Overview of Procedures at the Joint Session, Including Objections by Members of Congress* (updated Dec. 8, 2020), https://bit.ly/2X5JhT9................................................................................10

Fed. Judicial Ctr., *Courts of the District of Columbia*, https://bit.ly/2W8MPUg .......................................................................................23

Harry T. Edwards & Linda A. Elliott, *Federal Standards of Review: Review of District Court Decisions & Agency Actions* (Feb. 2018 update) ...................14

John M. Tyson, *A Short History of the American Bar Association's Canons of Professional Ethics, Code of Professional Responsibility, and Model Rules of Professional Responsibility: 1908-2008*, 1 Charlotte L. Rev. 9 (2008)...............................................................................................................23

Judith A. McMorrow et al., *Judicial Attitudes Toward Confronting Attorney Misconduct: A View from the Reported Decisions*, 32 Hofstra L. Rev. 1425 (2004)..........................................................................................................44

Resp. to Pet. for Writ of Mandamus, *In re Robertson*, No. 19-5075 (D.C. Cir. May 31, 2019) (Doc. 1790379) ..........................................................7

U.S. District Court Committee on Grievances, Jan. 1, 2021 to Dec. 31, 2021, https://bit.ly/3xLUDZP.....................................................................................5

## **GLOSSARY**

As used herein,

**App.** refers to the Appellants' Appendix.

## COUNTER-STATEMENT OF JURISDICTION[1]

The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331. This Court has "jurisdiction of appeals from all final decisions" of the District Court, 28 U.S.C. § 1291, and Appellants filed a timely notice of appeal from the order under review. *See* Appellants' Br. 1. However, in *amicus*' view, this appeal should be dismissed for lack of jurisdiction because the District Court's order is not an appealable "final decision" within the meaning of § 1291.

## STATEMENT OF THE ISSUES

Pursuant to this Court's June 24, 2021 appointment order (Doc. 1903719), the issue addressed in this brief is:

Whether Appellants have standing to appeal the District Court's order referring Appellant Erick G. Kaardal, Esq. to the District Court's Committee on Grievances.

Consistent with this Court's appointment order, *amicus* expresses no views on the merits of this appeal, or on the issues raised in the underlying complaint and District Court proceedings.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4), *amicus* states the following: *Amicus*, a member of the Bar of this Court, was appointed by the Court to address Appellants' standing to appeal. No counsel for a party authored this brief in whole or in part, and no party or counsel for a party contributed money intended to fund the preparation or submission of this brief. No person other than *amicus curiae* contributed money intended to fund the preparation or submission of this brief.

1

**STATUTES, RULES, AND REGULATIONS**

Except for provisions reproduced in the addendum to this brief, relevant statutes and rules are contained in Appellants' brief.

**INTRODUCTION**

This case presents a threshold question about the appealability of attorney-discipline-related orders—and, in particular, the appealability of orders that do not impose monetary or other coercive sanctions, but merely refer the matter to a disciplinary body for further inquiry.  On the facts of this case, the question is whether Appellant Erick G. Kaardal, Esq., and/or his law firm, can appeal from a post-judgment order in which the District Court (1) determined that it would refer Mr. Kaardal to the District Court's Committee on Grievances ("Committee"), (2) provided explanatory comments criticizing Mr. Kaardal's conduct, but (3) imposed no sanctions and (4) did not make a determination that Mr. Kaardal's conduct was in fact sanctionable, but left the matter for further inquiry by the Committee.

In *amicus*' view, the answer is "no," and the law requires dismissal of this appeal—albeit on statutory, not Article III, grounds.  Although no controlling precedent from this Court or the Supreme Court definitively resolves the narrow, threshold jurisdictional issue the Court has invited *amicus* to address, *amicus* submits that the best reading of this Court's precedent, the underlying constitutional

2

and statutory principles, and persuasive authority from other circuits supports the conclusion that this appeal should be dismissed for lack of jurisdiction.

The jurisdictional flaw in this appeal does not, in *amicus*' view, stem from a lack of Article III standing—on the contrary, precedent supports the conclusion that Mr. Kaardal meets the "constitutional minimum" requirements for Article III standing—but rather from a lack of statutory jurisdiction.  That is because a referral of an attorney to the Committee on Grievances is not an appealable "final decision" under 28 U.S.C. § 1291.  The District Court's referral order did not authoritatively decide any legal issues or bind any parties, and it marked not the *culmination* of an adjudicatory process but the *initiation* of proceedings that may (or may not) lead to a final, appealable decision at a later date.  In this instance, the District Court did not act in the capacity of an adjudicator, but in the capacity of a complainant.  Indeed, it did not even exercise any uniquely judicial power in referring Mr. Kaardal to the Committee, for any member of the public can submit a similar complaint with materially identical legal consequences.  Precedent and practical considerations support the conclusion that this is not the kind of "final decision" Congress intended to make appealable.  Rather, any appeal would lie from a subsequent adverse decision of the District Court's Disciplinary Panel—a decision that would mark the end (not the start) of disciplinary proceedings.

## STATEMENT OF THE CASE

### I.     Legal Background: Regulation Of Practice In The District Court

As it comes to this Court, this appeal concerns attorney regulation in the U.S. District Court for the District of Columbia.  "Within the federal system, each district court is authorized to govern and discipline its own bar.  Consistent with this practice, most district courts have adopted rules governing attorney discipline . . . ." *Weissman v. Quail Lodge Inc.*, 179 F.3d 1194, 1198 (9th Cir. 1999).  Many district courts have adopted broadly similar rules, but there is no single uniform approach. *See id.*  The rules governing practice, bar admission, disciplinary enforcement, rules of professional conduct, and related matters in the U.S. District Court for the District of Columbia are laid out in its Local Rules.  *See generally* D.D.C. Local Civ. R. 83.2 to 83.20.  Among other things, those rules provide that "[v]iolations of the Rules of Professional Conduct (as adopted by the District of Columbia Court of Appeals except as otherwise provided by specific Rule of this Court)" by attorneys practicing before the District Court "shall be grounds for discipline."  D.D.C. Local Civ. R. 83.15(a); *cf.* D.D.C. Local Civ. R. 83.12(b).

While reserving judges' statutory and inherent disciplinary powers, the Local Rules lay out an internal system and procedures for attorney discipline.  *See* D.D.C. Local Civ. R. 83.13.  The Chief Judge appoints a three-judge Disciplinary Panel, which is given "jurisdiction over all judicial proceedings involving the disbarment,

suspension, censure or other discipline of attorneys." D.D.C. Local Civ. R. 83.13(a). The District Court also has a standing Committee on Grievances ("Committee") made up of volunteer attorneys. D.D.C. Local Civ. R. 83.14(a); *cf.* U.S. District Court Committee on Grievances, Jan. 1, 2021 to Dec. 31, 2021, https://bit.ly/3xLUDZP (last visited Sept. 27, 2021). The Committee is "charged with receiving, investigating, considering and acting upon complaints" against attorneys. D.D.C. Local Civ. R. 83.14(b). "Any person seeking to charge an attorney subject to the [District Court's] Rules with any act or omission which may justify disbarment, suspension, censure, reprimand or other discipline" may do so by submitting a complaint to the Committee. D.D.C. Local Civ. R. 83.16(d)(1). Courts and judges in the District of Columbia may also refer an attorney to the Committee "on a Complaint that such attorney has engaged in conduct, which, if substantiated, would warrant the imposition of discipline." D.D.C. Local Civ. R. 83.16(d)(2). In addition, the Committee has "inherent power" to "inquire into misconduct of attorneys" even absent "any formal Complaint." D.D.C. Local Civ. R. 83.16(d)(1).

When it receives a complaint, the Committee reviews the submission and decides whether further investigation is warranted. The Committee can discharge the complaint without further investigation, refer the matter to D.C. disciplinary authorities, or investigate the matter through formal or informal processes. D.D.C.

5

Local Civ. R. 83.16(d)(3). Upon investigation, the Committee may decide to take no further action, or it may provide the respondent attorney with "an informal, non-reportable cautionary or educational statement," which is "not . . . considered discipline." *Id*. But if the Committee concludes that more serious action is warranted, it can "prepare charges and submit them to the Disciplinary Panel"; if the Disciplinary Panel "orders the charges to be filed," the respondent attorney receives a summons and must answer. D.D.C. Local Civ. R. 83.16(d)(7). The matter is then set for a hearing before the Disciplinary Panel. D.D.C. Local Civ. R. 83.16(d)(8). "If the charges are sustained by clear and convincing evidence, the Disciplinary Panel may reprimand, censure, suspend, disbar or otherwise discipline the respondent by entering an appropriate order." *Id.*

"All proceedings before the Committee involving allegations of misconduct of an attorney and all documents and charges presented to the Committee" are "confidential and privileged." D.D.C. Local Civ. R. 83.14(d). If the matter matures into a proceeding before the Disciplinary Panel, the filings and court orders in that proceeding are "matters of public records." *Id.* However, it appears that records of such matters do not appear on the PACER system as they would for normal cases; rather, *amicus*' understanding is that "[t]he Clerk to the Committee maintains an internal and confidential filing system using internal docket numbers that do not appear in CM/ECF" for attorney grievance matters, and "[a]ccess to attorney

6

discipline matter files is maintained by the Clerk to the Committee."[2]  Decisions of

the Disciplinary Panel are appealable.  *See, e.g.*, *Sullivan v. Comm. on Admissions*

*& Grievances*, 395 F.2d 954, 956 (D.C. Cir. 1967); *accord Robertson* Mandamus

Resp. at 1 (briefing submitted on behalf of Disciplinary Panel agreeing that attorneys

"may appeal" a Disciplinary Panel decision).

## II.    Factual And Procedural Background

The instant appeal arises out of an election lawsuit filed in the District Court

on December 22, 2020, about a month and a half after the 2020 presidential election

and eight days after the electoral votes were cast in the respective states.  *Cf.*

Appellants' Br. 3.  The plaintiffs were voter groups and individual voters in several

states.  In Appellants' characterization, "[t]he crux of the Complaint," which named

numerous state and federal officials as defendants, was "that the Electoral Count[]

Act, and specifically 3 U.S.C. § 15, is unconstitutional."  App. 1843.  Simultaneously

with the complaint, the plaintiffs filed a motion for a preliminary injunction

"enjoining Defendants from certifying Presidential electors who have not received

state legislative post-election certification and from counting Presidential elector

votes from Presidential electors who have not received state legislative post-election

---

[2] Resp. to Pet. for Writ of Mandamus at 11-12, *In re Robertson*, No. 19-5075 (D.C. Cir. May 31, 2019) (Doc. 1790379) ("*Robertson* Mandamus Resp.").  If a Disciplinary Panel decision is appealed, the Clerk of the District Court can assign it a miscellaneous docket number on PACER for ease of administration.  *Id.* at 14.

certification for the election of President and Vice President." *Id.* at 127. The plaintiffs were represented by Mr. Kaardal, a member of the District Court's bar. *See id.* at 1864.

The District Court denied the preliminary injunction on January 4, 2021. App. 1791-97. It held that the plaintiffs lacked standing, *id.* at 1793-94, expressed grave doubt about whether it had personal jurisdiction over the defendants, *id.* at 1794, and held that the "central [merits] contention" of the complaint was both "flat-out wrong" and inconsistent with Supreme Court precedent, *id.* at 1794-96. Stating that the plaintiffs had not explained "why they have waited until seven weeks after the election to bring this action and seek a preliminary injunction based on purportedly unconstitutional statutes that have existed for decades," the District Court said "[i]t is not a stretch to find a serious lack of good faith here." *Id.* at 1796. The District Court also expressed the view that plaintiffs "fail[ed] to make any effort to serve or formally notify any Defendant" and that this "renders it difficult to believe that the suit is meant seriously." *Id.* It therefore stated that it would, "at the conclusion of this litigation," "determine whether to issue an order to show cause why this matter should not be referred to its Committee on Grievances for potential discipline of Plaintiffs' counsel." *Id.*

Shortly thereafter, Mr. Kaardal filed a letter "memorializ[ing] his efforts regarding service," Appellants' Br. 5, and plaintiffs filed a notice of voluntary

dismissal, *see* App. 1839.  On January 7, 2021, the District Court issued a minute order dismissing the case pursuant to that notice, and a separate minute order instructing "Plaintiffs' counsel [to] show cause why the Court should not refer him to the Committee on Grievances for all of the reasons discussed" in the memorandum opinion explaining its denial of the preliminary injunction.  *Id.* at 9.  Mr. Kaardal and his law firm (Mohrman, Kaardal & Erickson, P.A.) filed a response arguing, *inter alia*, that the lawsuit was not filed in bad faith, *see id.* at 1840, "Mr. Kaardal had a good faith argument for an extension, modification, or reversal of existing law," *id.* at 1850, and Mr. Kaardal had made diligent efforts to serve the defendants, *see id.* at 1840-41.  The response was accompanied by exhibits, including a declaration by a legal ethics attorney opining that Mr. Kaardal did not violate Rule 3.1 of the D.C. Rules of Professional Conduct,[3] *see id.* at 1854-61, as well as a declaration by Mr. Kaardal describing his professional background and explaining his views on the issues the District Court raised, *see id.* at 1863-905.

On February 19, 2021, the District Court issued the order that is the subject of this appeal.  App. 2391-94.  The District Court concluded that Mr. Kaardal had "not sufficiently allayed the Court's concerns regarding potential bad faith," and

---

[3] That Rule provides, in relevant part, that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification, or reversal of existing law."  D.C. R. Prof. Conduct 3.1.

therefore decided it would "refer the matter to the Committee via separate letter so that it may determine whether discipline is appropriate." *Id.* at 2391.

The District Court stated that it would "not rebut each point Kaardal's Response makes," but "note[d] several of the numerous shortcomings that," in its view, "the Committee may wish to consider." App. 2391. It concluded that Mr. Kaardal had not adequately explained why the complaint "spen[t] 70+ pages on irrelevant allegations of [election] fraud." *Id.* at 2392. It also found Mr. Kaardal's response on personal jurisdiction unpersuasive, and stated that this was "another point that may require attention from the Committee." *Id.* The Court reiterated its view that the case could have been filed much earlier, and asserted that Mr. Kaardal's "fanciful" contrary arguments "make[] little sense." *Id.* at 2393. In the Court's view, "[t]o wait" until December 22, 2020 to file a facial constitutional challenge to longstanding federal statutes "smack[ed] once again of political gamesmanship and may be relevant to the Committee." *Id.*

The District Court also concluded that, despite Mr. Kaardal's "efforts" to serve the defendants, he was still "in the process of serving Defendants on January 4," just two days before a decision would realistically be necessary. App. 2393.[4] "A

---

[4] January 6, 2021 was the date for the House and Senate's certification and counting of the electoral votes for the 2020 presidential election. *See* Elizabeth Rybicki & L. Paige Whitaker, Cong. Rsch. Serv., RL32717, *Counting Electoral Votes: An Overview of Procedures at the Joint Session, Including Objections by Members of Congress* at 1 (updated Dec. 8, 2020), https://bit.ly/2X5JhT9.

suit that truly wished a merits opinion before January 6 would," the District Court reasoned, "have given notice to all Defendants" considerably earlier. *Id.* at 2393-94. This "le[d] the Court to conclude that [the plaintiffs] wished only to file a sweeping Complaint filled with baseless fraud allegations and tenuous legal claims to undermine a legitimate presidential election." *Id.* at 2394. The District Court stated that, given the "staggering" relief requested (i.e., effectively "invalidat[ing] the election"), "the Committee may well conclude" that Mr. Kaardal was "required to act with far more diligence and good faith than existed here." *Id.* The District Court emphasized, however, that "[i]t expresses no opinion on whether discipline should be imposed or, if so, what form that should take." *Id.* Mr. Kaardal and his law firm appealed.

## SUMMARY OF ARGUMENT

Appellants assert a right to appeal on the basis of this Court's decision in *Sullivan v. Committee on Admissions & Grievances*, 395 F.2d 954 (D.C. Cir. 1967). *Sullivan*—this Court's leading decision on the standing-related issues this appeal implicates—held that an attorney had standing to appeal from the District Court's decision determining that he committed violations of a number of specifically enumerated ethical rules, but declining to impose further sanctions. This case, however, presents a different fact pattern. *Sullivan* dealt with the District Court's determination that an attorney *did* violate ethics rules, at the *conclusion* of a

11

Committee disciplinary investigation and a District Court panel proceeding to resolve the Committee's charges. Here, the District Court only concluded that an attorney *may* have violated ethics rules, warranting *initiation* of Committee inquiry. This Court has not addressed its jurisdiction to hear an appeal of this kind, but other circuits that have addressed similar facts (notably, the Fifth and Tenth Circuits) have concluded that they lack jurisdiction to hear appeals from disciplinary referrals unless the referral is accompanied by a specific determination that the attorney violated ethical rules. *Amicus* submits that these decisions are correct, and that this Court lacks jurisdiction over the instant appeal.

However, the jurisdictional barrier to this appeal does not stem from Article III's case-or-controversy requirement. *Sullivan*, in combination with other reputational-injury precedents from this Court and the Supreme Court, supports the conclusion that Mr. Kaardal meets Article III's minimum constitutional requirements. Simply stated, a district court's determination that an attorney *may* have violated rules of professional conduct—articulated in a detailed, highly critical, public order—causes a legally cognizable injury-in-fact for Article III purposes, even where the court stops short of conclusively determining that the attorney committed violations. And that injury would be at least partially redressed by vacatur of the District Court's referral order.

Be that as it may, *amicus* submits that this Court lacks statutory jurisdiction over this appeal. Congress has granted this Court jurisdiction of appeals from "final decisions" of the District Court. But a referral to the Committee, without more, is not a "final decision" within the meaning of that statute. In itself, such a referral does not finally resolve or adjudicate any legal issues. It merely embodies a determination that a potential violation warrants further inquiry by the Committee. Indeed, it marks not the *end*, but the *beginning*, of a disciplinary process, which may or may not culminate in discipline imposed by the District Court's Disciplinary Panel. In making such a referral, the District Court acts essentially as a complainant, not an adjudicator, and its referral has the same legal effect as a complaint submitted to the Committee by a private party—something that the governing Local Rules allow any member of the public to do. If the Committee brings charges and the Disciplinary Panel issues an adverse decision, Mr. Kaardal will have the right to appeal from *that* decision—as occurred in *Sullivan*. But the initial referral is not itself the kind of appealable "final decision" contemplated by § 1291. Therefore, in *amicus*' view, this appeal should be dismissed.

## **ARGUMENT**

### I.    **Standard Of Review**

This Court has "an independent obligation to determine whether subject-matter jurisdiction exists," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), which

"encompasses the Article III and statutory 'prescriptions delineating the classes of cases'" this Court is authorized to hear. Harry T. Edwards & Linda A. Elliott, *Federal Standards of Review: Review of District Court Decisions & Agency Actions*, ch. III.A (Feb. 2018 update) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). As the parties invoking the Court's jurisdiction, Appellants "must carry throughout the litigation the burden of showing that [they are] properly in court." *McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936); *accord Rempfer v. Sharfstein*, 583 F.3d 860, 868-69 (D.C. Cir. 2009). *Amicus* takes no position on the standard of review governing the merits issues Appellants raise.

## II. Legal Framework And Case Law On The Appealability Of Discipline-Related District Court Determinations

Broadly speaking, the threshold jurisdictional question presented in this case is whether and when an attorney may appeal a discipline-related district court order. The bedrock principles governing this issue are familiar. First, "Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies,'" in which the "person invoking the power of [the] federal court . . . has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (quoting U.S. Const. art. III, § 2). "Article III demands that an actual controversy persist throughout all stages of litigation"; hence, "standing must be met by persons seeking appellate review, just

14

as it must be met by persons appearing in courts of first instance." *Id.* at 705 (internal quotation marks omitted).

Beyond this "constitutional minimum," *Am. Clinical Lab'y Ass'n v. Azar*, 931 F.3d 1195, 1203 (D.C. Cir. 2019) (internal quotation marks omitted), Congress has—with exceptions not relevant here—limited appellate jurisdiction to "final decisions of the district courts." 28 U.S.C. § 1291; *cf. In re Domestic Airline Travel Antitrust Litig.*, 3 F.4th 457, 459 (D.C. Cir. 2021). Although a "final decision" is typically a judgment resolving a lawsuit's merits, post-judgment orders that definitively resolve collateral matters (e.g., post-judgment contempt orders or orders granting attorney's fees) also qualify as "final decisions" for purposes of appellate jurisdiction. *See, e.g.*, *Serv. Emps. Int'l Union Local 32BJ v. Preeminent Protective Servs. Inc.*, 997 F.3d 1217, 1221 (D.C. Cir. 2021); *cf. generally* 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* §§ 3915.6, 3916 (2d ed., Apr. 2021 update) ("Wright & Miller").

As to these principles' application to discipline-related appeals by attorneys, several basic guideposts are well established. First, an attorney generally may appeal a district court order that directly imposes disciplinary sanctions on him or her. *See Aka v. U.S. Tax Ct.*, 854 F.3d 30, 32 (D.C. Cir. 2017) (noting this Court has "reviewed disbarment orders of . . . [the] district court"). This is true even when, as here, the attorney is not a named party to the proceeding below, but rather a party's

counsel. *See, e.g.*, *Manion v. Am. Airlines, Inc.*, 395 F.3d 428 (D.C. Cir. 2004) (attorney appeal of district court sanctions); *United States v. Wallace*, 964 F.2d 1214 (D.C. Cir. 1992) (same); *Hilton Hotels Corp. v. Banov*, 899 F.2d 40 (D.C. Cir. 1990) (same); *Fritz v. Honda Motor Co.*, 818 F.2d 924 (D.C. Cir. 1987) (per curiam) (same). Although the normal rule is that "only parties to a lawsuit, or those that properly become parties, may appeal," *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam), courts have reasoned that, from a practical standpoint, an attorney is the proper "party" to a district court's discipline- or sanctions-related order where the order is directed toward the attorney him- or herself. *See, e.g.*, *Frank v. Crawley Petroleum Corp.*, 992 F.3d 987, 993 (10th Cir. 2021); *Nisus Corp. v. Perma-Chink Sys., Inc.*, 497 F.3d 1316, 1319 (Fed. Cir. 2007); *see also Foreman v. Wadsworth*, 844 F.3d 620, 626 (7th Cir. 2016).[5]

---

[5] Under this case law, there appears to be no question that Mr. Kaardal was a "party" to the referral order for appealability purposes. It is more questionable whether Mr. Kaardal's law firm could be a proper appellant, as it was neither a party to the underlying lawsuit nor a discernible object of the referral order. *See* App. 2391, 2394 (defining "Plaintiffs' counsel" as "Erick G. Kaardal, Esq.," and concluding that "Plaintiffs' counsel" shall be referred to the Committee). Regardless, this Court "need not resolve the question of whether [the law firm] is a proper party" because its "presence or absence makes no material difference to either [this Court's] consideration of the merits of the controversy or [its] authority to award the requested relief." *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 72 n.16 (1978); *accord Ry. Lab. Execs.' Ass'n v. United States*, 987 F.2d 806, 810 (D.C. Cir. 1993) (per curiam).

Harder questions can arise where district courts issue attorney-discipline-related orders or make attorney-discipline-related determinations that, while in some sense "adverse" from the attorney's perspective, fall short of actually imposing any formal or tangible sanctions.  Courts are in agreement that an attorney cannot appeal an order simply because it contains *criticism* of, or negative commentary on, his or her litigation conduct.  *See, e.g.*, *Keach v. Cnty. of Schenectady*, 593 F.3d 218, 225-26 (2d Cir. 2010); *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1352 (Fed. Cir. 2003) ("judicial statements that criticize [a] lawyer, no matter how harshly" are not appealable in themselves); *In re Harris*, 51 Fed. Appx. 952, 955-56 (6th Cir. 2002) (collecting cases).[6]

At the same time, the absence of a formal or tangible sanction is not always fatal to appealability.  This Court held as much in *Sullivan v. Committee on Admissions & Grievances*, 395 F.2d 954 (D.C. Cir. 1967), which presented an appeal

---

[6] Courts of appeals have cited a range of rationales for why mere criticisms are insufficient to make an order appealable by an attorney—relying, in different circumstances and cases, on Article III's injury-in-fact requirement, *United States v. Ensign*, 491 F.3d 1109, 1115-18 (9th Cir. 2007), the rule that courts review judgments rather than opinions, *In re Williams*, 156 F.3d 86, 90 (1st Cir. 1998), the rule that prevailing parties ordinarily cannot appeal, *Keach*, 593 F.3d at 223, limitations on statutory jurisdiction, *Bolte v. Home Ins. Co.*, 744 F.2d 572, 572-73 (7th Cir. 1984), the rule that nonparties ordinarily may not appeal, *United States v. Carter*, 995 F.3d 1214, 1218-21 (10th Cir. 2021), and pragmatic concerns about "open[ing] the floodgates to appeals by [anyone] who feels aggrieved by some critical statement made by the court," *Tesco Corp. v. Nat'l Oilwell Varco, L.P.*, 804 F.3d 1367, 1375-76 (Fed. Cir. 2015) (internal quotation marks omitted).

from a decision of the District Court resolving misconduct charges filed by the District Court's Committee on Admissions and Grievances (the predecessor to the modern Committee). *Id.* at 954. A three-judge District Court panel (akin to the modern Disciplinary Panel) found that the respondent attorney had violated several specific ethical rules, but decided "not to impose sanctions" and instead "dismiss[ed] the charges with an admonition to [the attorney] and a caveat to the bar generally." *Id.* at 956. In a brief analysis, this Court concluded that the attorney had "standing to appeal" because "the District Court ha[d] determined that Appellant was guilty of proscribed conduct and this determination plainly reflects adversely on his professional reputation"—a set of circumstances this Court analogized to "an accused who is found guilty but with penalties suspended." *Id.*

For the most part, other circuits have embraced *Sullivan*'s logic—albeit with some arguable variations in analytic approach—so that today an "overwhelming weight of authority" supports the position that "an attorney may appeal a decision where the district court imposes a *tangible* sanction or makes an *express finding* that a lawyer has committed *specific acts* of professional misconduct," but not from orders merely criticizing attorney conduct. *Keach*, 593 F.3d at 226 (emphasis added); *cf. also Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1076 n.7 (8th Cir.

2017) (holding, on the basis of emerging consensus among circuits, that "non-sanctioned findings of professional misconduct" are appealable).[7]

In reconciling a right to appeal judicial findings of specific ethical violations, even absent tangible sanctions, with the principle that appellate courts "review[] judgments, not statements in opinions," *California v. Rooney*, 483 U.S. 307, 311 (1987) (per curiam) (internal quotation marks omitted), courts have reasoned that where "the district court ma[kes] a finding and . . . legal conclusion that [an attorney] . . . violated a specific rule of ethical conduct," "[s]uch a finding, *per se*, constitutes a sanction," *United States v. Talao*, 222 F.3d 1133, 1138 (9th Cir. 2000). That is to say, such a finding is "functionally," if not "formal[ly]," a "public reprimand" and "thus a reviewable sanction[]," *United States v. Llanez-Garcia*, 735 F.3d 483, 491 (6th Cir. 2013). Courts have, however, "taken care" to limit this reasoning to cases where there is "an actual finding of professional misconduct," *Montalto v. Miss. Dep't of Corr.*, 938 F.3d 649, 656-57 (5th Cir. 2019) (internal quotation marks omitted), lest the exception swallow the rule that mere critical statements are not

---

[7] The Seventh Circuit was once an outlier on this point, holding that "an attorney may not appeal from an order that finds misconduct but does not result in monetary liability, despite the potential reputational effects." *Clark Equip. Co. v. Lift Parts Mfg. Co.*, 972 F.2d 817, 820 (7th Cir. 1992); *see Seymour v. Hug*, 485 F.3d 926, 929 (7th Cir. 2007) (noting split). But it has since abandoned that approach. *See Martinez v. City of Chicago*, 823 F.3d 1050, 1053-55, 1057 (7th Cir. 2016) (concluding that "detailed findings of professional misconduct" in a "formal" "sanctions order" are appealable, and overruling contrary circuit precedent).

appealable.  Although the cases in this area of law are numerous, *amicus* is aware of no decision in which a court has held that it had jurisdiction over an appeal of an attorney-discipline-related district court order that (as here) *neither* imposed a tangible sanction *nor* contained specific findings of sanctionable misconduct.

Since *Sullivan*, it appears this Court has never revisited the appealability of attorney-discipline-related orders that impose no formal sanctions.  Nor has this Court addressed the specific issue at the heart of this case—the appealability of initial referrals to disciplinary bodies, as opposed to decisions that actually impose sanctions (or, as in *Sullivan*, make conclusive determinations that an attorney violated ethics rules).  This case accordingly presents an issue of first impression in this Court.

Courts of appeals that have squarely confronted the issue have, to *amicus'* knowledge, uniformly held that a disciplinary referral, without more, is not appealable—although they have been less clear about the precise rationale (e.g., whether their holdings were based in constitutional, statutory, or prudential limitations on appealability, or some combination thereof).  *See Zente v. Credit Mgmt., L.P.*, 789 F.3d 601, 604-06 (5th Cir. 2015); *Teaford v. Ford Motor Co.*, 338 F.3d 1179, 1181-83 (10th Cir. 2003); *see also Baker Grp., L.C. v. Burlington N. &*

*Santa Fe Ry.*, 451 F.3d 484, 491-92 (8th Cir. 2006) (as alternative holding).[8]  By contrast, courts have allowed appeals from orders that *both* refer an attorney to disciplinary authorities *and* make "specific findings of attorney misconduct." *Zente*, 789 F.3d at 605-06; *see Adams v. Ford Motor Co.*, 653 F.3d 299, 305-06 (3d Cir. 2011); *In re Goldstein*, 430 F.3d 106, 111-12 (2d Cir. 2005) (per curiam); *cf. also United States v. Woodberry*, 405 Fed. Appx. 840, 842-43 (5th Cir. 2010) (per curiam).

This case presents the question whether this Court should adopt a similar approach toward appeals of disciplinary referrals, and if so, on what doctrinal basis. As explained below, *amicus* submits that the prevailing approach is correct: this Court lacks jurisdiction to hear appeals of attorney disciplinary referrals in the absence of further sanctions or an express determination by the lower court that the attorney violated governing rules of conduct.  On the facts of this case, that rule dictates dismissal.  However, that outcome is best justified on the basis of statutory jurisdiction, not Article III standing.

---

[8] *Cf. also In re Metro. Gov't of Nashville & Davidson Cnty.*, 606 F.3d 855, 862-63 (6th Cir. 2010) (stating, without further analysis, that "a letter to the Department of Justice suggesting an investigation into [an attorney's] possible misconduct . . . is, in itself, plainly not appealable"); *Adkins v. Christie*, 227 Fed. Appx. 804, 806 (11th Cir. 2007) (per curiam) (in itself, a disciplinary referral "is not a reviewable measure").

### III.    Mr. Kaardal Meets The "Constitutional Minimum" Conditions For Article III Standing.

In *amicus*' view, and consistent with the above-referenced decisions of other circuits, this case should be dismissed for lack of jurisdiction—but not for lack of Article III standing. Although this Court lacks statutory jurisdiction to hear this appeal, *see infra* Part IV, precedent supports Mr. Kaardal's claim of Article III standing.

### A.    The Referral Order Caused Mr. Kaardal A Legally Cognizable Injury For Article III Purposes.

Appellants assert Article III standing "on the basis of a reputational injury," emphasizing the critical comments contained in the District Court's referral order and analogizing this case to *Sullivan*. Appellants' Br. 10-11.[9] In *Sullivan*—which remains this Court's leading (and apparently only) case addressing standing to appeal from attorney-discipline-related orders that do not impose any concrete sanctions—the Committee on Admissions and Grievances (predecessor to the modern Committee on Grievances) charged that Sullivan had violated "Canons 6, 16, 27, 28, and 35 of the Canons of Ethics." *Sullivan*, 395 F.2d at 956. The District Court panel, in turn, found that Canons 16, 27, 28, and 35 had been violated. *Id.*; *see also id.* at 957 (supplemental opinion noting that District Court made no finding

---

[9] Appellants do not rely on other potential effects of the referral. *Amicus* accordingly does not consider the merits of alternative theories of injury-in-fact.

as to Canon 6).[10]  "[B]ut, for reasons set forth in its opinion, [the District Court] concluded to dismiss the charges with an admonition to Appellant and a caveat to the bar generally."  *Id.* at 956.  The Committee argued that Sullivan lacked standing to appeal because the District Court decided "not to impose sanctions."  *Id*.  This Court disagreed.  It reasoned as follows:

> [T]he District Court has determined that Appellant was guilty of proscribed conduct and this determination plainly reflects adversely on his professional reputation.  In a sense Appellant's posture is not unlike that of an accused who is found guilty but with penalties suspended. We conclude this gives him standing to appeal.

*Id.*

Although *Sullivan* did not apply the modern three-part test for Article III standing (which had not yet doctrinally solidified),[11] it clearly held that the

---

[10] The "Canons" to which *Sullivan* refers appear to be the ABA Canons of Professional Ethics, which existed from 1908 to 1969. *Cf. generally* John M. Tyson, *A Short History of the American Bar Association's Canons of Professional Ethics, Code of Professional Responsibility, and Model Rules of Professional Responsibility: 1908-2008*, 1 Charlotte L. Rev. 9, 10-14 (2008).  Neither the D.C. Rules of Professional Conduct nor the current D.C. Court of Appeals existed when *Sullivan* was decided.  *See* Fed. Judicial Ctr., *Courts of the District of Columbia*, https://bit.ly/2W8MPUg (last visited Sept. 27, 2021) (describing 1970 legislation establishing modern D.C. Court of Appeals); D.C. Bar Rules of Pro. Conduct Rev. Comm., *Proposed Amendments to the District of Columbia Rules of Professional Conduct: Final Report and Recommendation* at 6 (2005), https://bit.ly/3zmOAvf (describing history of D.C. Rules).

[11] *See generally* Cass R. Sunstein, *What's Standing After* Lujan*? Of Citizen Suits, "Injuries," and Article III*, 91 Mich. L. Rev. 163, 168-70 (1992) (describing evolution of modern standing doctrine).

reputational consequences of a district court's determination that an attorney violated ethical rules are a sufficient injury for Article III standing purposes. Moreover, although this Court has not revisited the issue in the intervening decades, *Sullivan*'s holding has been consistently cited as persuasive authority in other circuits, and today represents a clear consensus position among the courts of appeals. *See, e.g.*, *Keach*, 593 F.3d at 224-26. Thus, despite its age, *Sullivan* retains precedential vitality.

This Court's more recent precedents also confirm *Sullivan*'s premise that the reputational consequences of an "inherently stigmatizing" "designation" by a "governmental" authority constitute a cognizable Article III injury-in-fact. *Pulphus v. Ayers*, 909 F.3d 1148, 1153 (D.C. Cir. 2018); *see Foretich v. United States*, 351 F.3d 1198, 1213-14 (D.C. Cir. 2003) (*de facto* congressional designation as "child abuser"); *McBryde v. Comm. to Rev. Circuit Council Conduct*, 264 F.3d 52, 56-57 (D.C. Cir. 2001) (Judicial Council reprimand of district judge for "abusive" behavior). So do other circuits' precedents. *See, e.g.*, *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 705, 711-12 (6th Cir. 2015) (law enforcement labeling of musical group's fans as "hybrid gang"); *Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 622-23 (8th Cir. 2012) (public university's labeling of non-profit's website as "unreliable" and listing alongside genocide-denial websites).

It is a harder question whether the logic of *Sullivan* and this Court's other reputational-injury cases extends to the circumstances of this case (although, as discussed below, *amicus* believes the better answer to that question is yes). Here, the District Court's referral order did *not* make a finding that Mr. Kaardal violated rules of professional conduct. *Cf.* Appellants' Br. 11 (noting as much). Indeed, it did not even cite specific rules of professional conduct. *See* App. 2391-94. Instead, the District Court simply expressed "*concerns* regarding *potential* bad faith" that, in its view, were sufficient to warrant further inquiry by the Committee. *Id.* at 2391 (emphasis added). And while the District Court identified certain issues that, in its view, the Committee "*may* wish to *consider*," *id.* (emphasis added), it did not itself determine that Mr. Kaardal violated any ethical rules or otherwise engaged in sanctionable conduct. *Cf. Carter*, 995 F.3d at 1221 ("[A] suggestion [of ethics rule violations] does not amount to a specific finding of misconduct." (internal quotation marks omitted)). Ultimately, the District Court "stopped short of an actual finding of professional misconduct," *United States v. El-Mezain*, 664 F.3d 467, 579 (5th Cir. 2011), and left the matter for further inquiry by the Committee. That stands in marked contrast to *Sullivan*, which involved an order issued at the *conclusion* of Disciplinary Panel proceedings (which in turn followed a Committee inquiry), and that explicitly determined that the attorney *had in fact violated* specifically enumerated ethical canons.

Intuitively, these distinctions are quite salient. Indeed, as discussed in Part IV below, *amicus* submits that they make a critical—and dispositive—difference for purposes of statutory jurisdiction. However, the distinctions between this case and *Sullivan* do not appear sufficient to deprive Mr. Kaardal of Article III standing.[12] *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), is particularly instructive. There, a credit reporting agency disseminated reports that identified consumers as "potential match[es]" to names on a Treasury Department list of "terrorists, drug traffickers, [and] other serious criminals." *Id.* at 2201. The plaintiffs claimed Article III standing based on reputational harms. *Id.* at 2208. In disputing the plaintiffs' Article III standing, the credit reporting agency "point[ed] out that the reports merely identified a consumer as a *potential* match to an individual" on the Treasury Department's list. *Id.* at 2209 (internal quotation marks omitted). The Court, however, rejected that argument. It stated that "[t]he harm from being labeled a 'potential terrorist' bears a close relationship to the harm from being labeled a

---

[12] That said, to the extent Appellants' brief can be construed to suggest that an attorney suffers a cognizable injury-in-fact *any time* a court's "opinion . . . reflect[s] unfavorably on [an attorney's] professional conduct," Appellants' Br. 10, *amicus* disagrees. "At some point, . . . claims of reputational injury can be too vague and unsubstantiated" under Article III. *McBryde*, 264 F.3d at 57. For example, a court's characterization of an attorney's arguments as "pure baloney" would doubtless sting, *Williams*, 156 F.3d at 88, and could even have reputational consequences. But it is hard to accept that this would suffice to cause a "concrete" reputational injury-in-fact for Article III purposes.

'terrorist'"—close enough, it held, to establish a cognizable Article III injury-in-fact. *Id.*

So far as Article III injury-in-fact is concerned, *TransUnion*'s reasoning appears sufficient to bridge the gap between *Sullivan* and this case. In *Sullivan*, the District Court labeled an attorney as having violated rules of professional conduct. This Court held that the reputational consequences of that determination were sufficient to establish Article III standing. Here, the District Court labeled an attorney as having *potentially* violated rules of professional conduct. If that distinction did not make a difference in *TransUnion*, it is unclear why it would do so here. Indeed, if anything, it seems harder to defend the materiality of the distinction here than in *TransUnion*: in *TransUnion*, the "potential match" was the result of an automated name-matching process and did not lay out any other reasons to believe the individuals in question might have been listed criminals. 141 S. Ct. at 2201. Here, the District Court actually laid out detailed reasons why it believed Mr. Kaardal may have violated rules of professional conduct.

The conclusion that Mr. Kaardal suffered an Article III injury-in-fact also makes intuitive sense. The question at the heart of the Article III standing inquiry— "What's it to you?"—seems readily answerable here. *TransUnion*, 141 S. Ct. at

2203 (internal quotation marks omitted).[13]  "[O]ne's professional reputation is a lawyer's most important and valuable asset," *Walker v. City of Mesquite*, 129 F.3d 831, 832 (5th Cir. 1997)—perhaps especially where (as here) the attorney has never been subject to discipline, *see* App. 1864.  Moreover, while Mr. Kaardal did not submit declarations elaborating on how his professional reputation has been concretely harmed, precedent suggests that such declarations are not necessary here. *Cf. Sierra Club v. EPA*, 292 F.3d 895, 899-900 (D.C. Cir. 2002) (declarations not required where standing is "self-evident" from challenged orders and record below). Notably, this Court does not appear to have required supporting declarations in *Sullivan*.  Rather, this Court treated it as straightforwardly apparent that concrete reputational repercussions would follow from a district court's determination that an attorney violated ethical rules—or at least that there was a "substantial risk" of such

---

[13] The analysis might be different if all follow-on proceedings before the Committee and/or the Disciplinary Panel had concluded, potentially rendering the referral order moot.  This Court has held that "lingering" reputational effects of an "[]expired" government action (such as a time-limited sanction that has run out) are generally insufficient to avoid mootness.  *Anderson v. Carter*, 802 F.3d 4, 10-11 (D.C. Cir. 2015) (quoting *Foretich*, 351 F.3d at 1212-13); *Gul v. Obama*, 652 F.3d 12, 20-21 (D.C. Cir. 2011); *McBryde*, 264 F.3d at 57-58.  The contours of this rule are not perfectly clear, *cf. Anderson*, 802 F.3d at 12 (Srinivasan, J., concurring in part and dissenting in part), but it might apply here if all follow-on Committee and/or Disciplinary Panel proceedings were concluded.  Because Appellants' brief does not describe the status of any such follow-on proceedings, and because such matters are not readily determinable through publicly available sources, *see supra* pp. 6-7 & n.2, *amicus* does not address these potential mootness concerns except to flag the possibility.

repercussions. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted). *TransUnion* similarly did not rely on any declarations in holding that reports identifying consumers as "potential" criminals, and disseminated to third parties, caused a sufficient reputational injury-in-fact for Article III purposes. 141 S. Ct. at 2208-09. Accordingly, in *amicus*' view, Article III's injury-in-fact requirement is not a barrier to Mr. Kaardal's appeal.[14] Nor does there appear to be any doubt that the relevant injury-in-fact is causally attributable to the District Court's referral order.

It is arguable that the Tenth Circuit took a stricter view in *Teaford v. Ford Motor Co.*, 338 F.3d 1179. In *Teaford*, an attorney appealed "a district judge's order refusing to reconsider his earlier referral of [the attorney]'s conduct" to disciplinary authorities. *Id.* at 1180. The Tenth Circuit reasoned that the order was not appealable because the order did not "amount to a sanction sufficiently injurious to [the attorney] to give her standing to appeal." *Id.* at 1181. It concluded that "reference of [a] matter to the disciplinary committee of the bar [is] not tantamount

---

[14] Matters may be different as to Mr. Kaardal's law firm. Appellants' brief says nothing (nor have Appellants submitted declarations) about injuries to the law firm *per se*, and the District Court's order on its face concerned only Mr. Kaardal. But the issue is purely academic, because Mr. Kaardal and his firm raise the same arguments and seek the same relief. *See supra* p. 16 n.5.

to a finding of misconduct, let alone imposition of a sanction,"[15] and emphasized that although such an order "may imply judicial disapproval that may harm the attorney's reputation, . . . the judgment implicit in such a [referral] is below the level of a censure or specific finding of misconduct," amounting instead to a mere "suggestion that a violation of rules of conduct *may* have occurred." *Id.* at 1181-82; *accord Zente*, 789 F.3d at 603-04, 607 (embracing *Teaford*'s reasoning and holding).

*Teaford* did not expressly indicate that its holding was grounded in Article III's case-or-controversy requirement, and the court's opinion elsewhere suggested a rationale grounded in the statutory requirement of a final decision. *See infra* p. 32 (further discussing *Teaford*). But its focus on the relative gravity of the reputational injury could be interpreted as implicitly invoking Article III's injury-in-fact requirement. Even if that were a correct interpretation of the Tenth Circuit's reasoning, however, *Teaford* was decided without the benefit of *TransUnion*, which significantly undermines the importance of the distinction between a "finding of misconduct" and "a suggestion that a violation of rules of conduct *may* have occurred" for Article III purposes. *Teaford*, 338 F.3d at 1181-82. Moreover, it appears that the language of the referral letter in *Teaford* was considerably milder than that of the order in this case. *Id.* at 1180 (quoting letter); *see also id.* at 1181-

---

[15] The Tenth Circuit has embraced the rule of *Sullivan* and allows appeals of actual findings of attorney misconduct, even without accompanying concrete sanctions. *See Butler v. Biocore Med. Techs., Inc.*, 348 F.3d 1163, 1167-69 (10th Cir. 2003).

82 & n.1 (noting that letter from which attorney appealed did not "express any opinion of [the attorney's] actions"). Thus, *amicus* submits that to the extent *Teaford* rested on Article III considerations, it is distinguishable and, to the extent not distinguishable, superseded by *TransUnion*.[16]

### B. Mr. Kaardal's Injury Could Be At Least Partially Redressed By Vacating The Referral Order.

Precedent also supports the conclusion that Article III's redressability requirement is satisfied. This Court has consistently held that it can "at least partially redress" reputational injuries by holding unlawful the judicial, legislative, or executive action that caused those injuries. *Foretich*, 351 F.3d at 1215. *Sullivan* implicitly applied the same reasoning to judicial determinations that an attorney violated ethical rules. And the same reasoning seems applicable here. While vacating the District Court's referral order cannot undo all of the reputational consequences or erase the historical record of the District Court's criticisms, this Court's "determination that [the District Court] acted unlawfully" could "at least partially redress" Mr. Kaardal's reputational injury by removing the order's "legitimate force." *Foretich*, 351 F.3d at 1214-15 (internal quotation marks and emphasis omitted); *accord Weeks v. Indep. Sch. Dist. No. I-89*, 230 F.3d 1201, 1207 (10th Cir. 2000) ("[A] favorable [appellate] decision would likely provide at least

---

[16] That said, *amicus* believes that the bottom-line conclusion of *Teaford*—dismissal for lack of jurisdiction—was correct. *See generally infra* Part IV.

some redress" for an attorney subject to a sanctions order "because it could help ameliorate the damage to her professional reputation"). Thus, in *amicus*' view, Mr. Kaardal has satisfied all three requirements for Article III standing.

## IV. The District Court's Referral Order Is Not A "Final Decision" Over Which This Court Has Statutory Jurisdiction.

Although *amicus* believes that precedent supports the conclusion that Mr. Kaardal meets the "constitutional minimum" requirement of Article III standing, this appeal must be dismissed unless the District Court's referral order qualifies as an appealable "final decision" within the meaning of 28 U.S.C. § 1291.[17] *Amicus* submits that the District Court's order does not fall within the scope of that statute.[18]

Although *amicus* is aware of no court that has expressly held that referrals like the one at issue here fall outside the ambit of § 1291, the Tenth Circuit clearly gestured toward that rationale in *Teaford*, analogizing a referral letter to an "order to show cause," which is not appealable because such orders are not final decisions, *Teaford*, 338 F.3d at 1181 (citing *Mancuso v. Ind. Harbor Belt R.R.*, 568 F.2d 553, 554 (7th Cir. 1978) (per curiam)). Moreover, as discussed below, case law interpreting the scope of § 1291 supports the conclusion that Committee referrals are

---

[17] Appellants assert no alternative statutory basis for appellate jurisdiction, *see* Appellants' Br. 1, and *amicus* is aware of none.

[18] If this Court concludes that it lacks statutory jurisdiction, it may dismiss on that basis without addressing Article III standing. *See, e.g.*, *Am. Petroleum Inst. v. EPA*, 862 F.3d 50, 75 (D.C. Cir. 2017) (per curiam).

not the kind of "final decisions" Congress intended to be appealable under that statute. Briefly stated, the District Court's referral order lacks the normal indicia of "finality" because it *initiated* rather than concluded a proceeding, and it lacks the character of a judicial "decision" within the statute's meaning because a court that refers an attorney to the Committee is acting in the capacity of a complainant, not an adjudicator. Separately or in combination, those factors lead to the conclusion that the referral order is not an appealable "final decision."

A.     The Referral Order Lacks The Normal Indicia Of Finality.

By statute, this Court has jurisdiction of appeals from "all *final* decisions" of the District Court. 28 U.S.C. § 1291 (emphasis added). Although "in a certain sense, finality can be asserted of any order of a court," *Alexander v. United States*, 201 U.S. 117, 121 (1906), it is well established that § 1291 "is normally limited to an order that resolves [an] entire case," *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020). Thus, courts "ha[ve] long given § 1291 a practical rather than a technical construction," *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (internal quotation marks omitted), driven by an understanding of Congress' "restrictive intention" in defining the scope of appellate jurisdiction, *Brooks v. Laws*, 208 F.2d 18, 29 (D.C. Cir. 1953).[19]

---

[19] *Mohawk* involved the collateral-order doctrine, which countenances rare exceptions to normal finality principles. Appellants have not invoked that doctrine, and it is inapplicable here. For the reasons discussed in the balance of Part IV.A and

Here, the referral order is "final" only in a thin and rather formalistic sense. It is true that it represents a final determination *to make a referral*. But any district court order could be deemed "final" in a similarly tautological sense (e.g., a "final" decision not to dismiss a case on the pleadings). In any practical sense, the referral order constitutes not the end of a proceeding, but the *initiation* of one. *Cf. FTC v. Standard Oil Co.*, 449 U.S. 232, 239-42 (1980) (in agency-review context, "issuance of [agency] complaint" "[s]erving only to initiate [further] proceedings" was not "final agency action" subject to review); *Fourth Branch Assocs. (Mechanicville) v. FERC*, 253 F.3d 741, 746 (D.C. Cir. 2001) (similar). The purpose and effect of a referral to the Committee is to begin a process of review. That process may (or may not) culminate in the actual imposition of discipline by the Disciplinary Panel. So understood, the "entire case" by reference to which finality ought to be assessed, *Ritzen*, 140 S. Ct. at 586, is the disciplinary proceeding that *begins* with the referral;

---

Part IV.B, the referral order is not "conclusive" as to whether Mr. Kaardal committed sanctionable conduct or should be sanctioned. *Mohawk*, 558 U.S. at 106 (internal quotation marks omitted); *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (doctrine applies only to "decision[s] . . . which *finally determine* claims of right" (emphasis added)). And for substantially the reasons discussed in Part IV.C, "the value of the interests" potentially lost by "rigorous application" of normal finality requirements is insufficiently "important" to justify the doctrine's application. *Mohawk*, 558 U.S. at 107 (internal quotation marks and emphasis omitted); *see id.* at 112 (similar). Moreover, if this Court agrees that a disciplinary referral is not even a judicial "decision" within § 1291's meaning, *see infra* Part IV.B, the collateral-order doctrine, as a "practical construction of the word 'final,'" would still be insufficient to render the referral appealable. *Sundel v. United States*, 985 F.3d 1029, 1032 (D.C. Cir. 2021) (internal quotation marks omitted).

the "final decision[] of the district court[]" in that proceeding, if any, is the decision of the Disciplinary Panel.  28 U.S.C. § 1291.

Notably, Congress' main objective in imposing a finality requirement has been, "from the very beginning," to prevent "piecemeal disposition on appeal of what for practical purposes is a single controversy."  *Cobbledick v. United States*, 309 U.S. 323, 325 (1940).  That objective counsels against construing disciplinary referral orders as "final decisions" within the statute's meaning.  An eventual Disciplinary Panel decision would constitute an appealable final decision.  *See supra* pp. 7, 15-16.  Thus, treating initial referral orders as "final decisions" would allow two appeals (often covering substantially the same basic merits issues) in every disciplinary proceeding that matured to the stage of charges, Disciplinary Panel hearings, and the imposition of sanctions by the District Court.  This would be akin to allowing an appeal both from the denial of a motion to dismiss *and* from a final decision on the merits—an outcome clearly contrary to the accepted understanding of the finality requirement.[20]

Appellants may respond that any follow-on Disciplinary Panel proceedings would be a formally separate matter before a panel of three judges (not the single

---

[20] In fact, an even more apt analogy might be allowing defendants to appeal from both the *initial filing of a civil complaint* and from a final decision on the merits—a "Complaint" is, after all, what the District Court decided to submit.  D.D.C. Local Civ. R. 83.16(d)(2); *cf.* App. 2391; *accord supra* p. 5.

judge who made the initial referral) under a different docket number, and that the matter may never return for a further and more final decision by the District Court—*viz.*, if the Committee does not bring charges to the Disciplinary Panel. These features do, concededly, distinguish disciplinary referrals from the mine run of orders deemed non-appealable on finality grounds. (And in a sense this simply serves to highlight how far disciplinary referrals are from ordinary judicial decisions of the sort normally reviewed on appeal—that is, to highlight their resemblance to action by a complainant, not a decision, final or otherwise, of an adjudicator. *See infra* pp. 38-42.) But these distinctions are more "technical" than "practical" on inspection. *Mohawk*, 558 U.S. at 106 (internal quotation marks omitted).

That the referral order was entered on a different *docket* than any eventual Disciplinary Panel decision is a formality in the purest sense. Nor is it clear why it would matter that an eventual Disciplinary Panel decision would be issued by different judges; even in a traditional civil case, the final decision is not always entered by the same judge as prior interlocutory orders. *Cf., e.g.*, Fed. R. Civ. P. 63. The most practically salient distinction between the disciplinary proceeding initiated by a referral order and an ordinary district court case is that the proceedings pass into the Committee's hands in the interim, which may resolve the matter (albeit without imposing discipline) without it ever coming before the Disciplinary Panel, and thus presumably without ever reaching the point of an appealable "final

36

decision[] *of the district court[].*"  28 U.S.C. § 1291 (emphasis added).  Thus, an

attorney may never have the ability to appeal, depending on how the investigation

proceeds.  But that would occur only if the matter ends without imposition of

discipline (which the Committee itself cannot impose, *see supra* pp. 5-6); in that

event, the attorney is positioned not dissimilarly to a party in an ordinary case that,

while dissatisfied by certain pre-final decisions and perhaps also by language in the

lower court's opinion(s), still cannot appeal for lack of an adverse final decision.

*See, e.g.*, *Camreta v. Greene*, 563 U.S. 692, 703-04 (2011); *see infra* pp. 45-48.[21]

Thus, for all practical purposes, "[r]equiring [parties] to undergo the remainder of

the proceeding" before the Committee and the Disciplinary Panel prior to appealing

(if any appealable decision ultimately emerges) appears to "align[] with how the law

handles analogous [circumstances] in similar contexts."  *Jarkesy v. SEC*, 803 F.3d

9, 25 (D.C. Cir. 2015).  These factors, singly or in combination with the points

discussed below, *see infra* Part IV.B, support the conclusion that an initial referral

is not the kind of "final decision" Congress intended to make appealable.[22]

---

[21] The only difference is that this outcome generally stems, in ordinary civil cases, from the lack of a final decision appealable *by that party*, rather than the lack of a final decision *simpliciter*—a formal analytic distinction, to be sure, but one whose practical effects, if any, appear marginal at best.

[22] That the District Court previously issued an order finally resolving the underlying election lawsuit (following plaintiffs' notice of voluntary dismissal) does not change this analysis.  Appellants do not (and could not) appeal that order, to which they were not even parties, *cf. supra* p. 16 & n.5, and the post-judgment discipline-related proceedings are an entirely separate matter to which the finality requirement is

B.    The Referral Order Lacks The Indicia Of An Appealable Judicial "Decision."

The District Court's referral order also lacks the indicia of the class of judicial "decisions" Congress intended to make appealable under § 1291.  District courts carry out "countless acts" that are plainly not appealable no matter how final they are, *In re Application for Exemption from Elec. Pub. Access Fees*, 728 F.3d 1033, 1037 (9th Cir. 2013)—as when district courts "appoint clerks and bailiffs, order supplies, write and promulgate rules, and so on," *Brooks*, 208 F.2d at 29.  "It would be absurd to suggest that every 'final decision' on any such matter is appealable under § 1291," *Ayestas v. Davis*, 138 S. Ct. 1080, 1090 (2018), and courts accordingly interpret the word "decision" in light of Congress' "restrictive intention" in enacting that statute.  *Brooks*, 208 F.2d at 29; *cf., e.g.*, *Nsinano v. Barr*, 808 Fed. Appx. 554, 555-56 (9th Cir. 2020) (determination not to provide a "law enforcement certification" for immigration purposes was not appealable judicial decision), *cert. denied*, 141 S. Ct. 1435 (2021).  Indeed, this Court has held that "a district court's application of its rules to deny someone admission to its bar 'is not appealable'" on this basis.  *Aka*, 854 F.3d at 32 (quoting *Brooks*, 208 F.2d at 22).[23]

---

independently applicable.  *See generally* Wright & Miller §§ 3915.6, 3916; *cf. Pigford v. Veneman*, 369 F.3d 545, 546-47 (D.C. Cir. 2004).

[23] Some circuits have disagreed with *Brooks*, *see In re Application of Mosher*, 25 F.3d 397, 398 n.1 (6th Cir. 1994), but it appears to remain good law in this Circuit.  *See Aka*, 854 F.3d at 32; *but cf.* Answering Br. for Appellee at 4-6 & n.2, *Barr-Zvulun v. U.S. Tax Ct., Admissions Off.*, No. 20-1071 (D.C. Cir. Jan. 15, 2021) (Doc.

In analyzing whether a given District Court action constitutes an appealable "decision," courts principally look to whether the action is a "decision[] *of a judicial character*." *In re Application for Exemption*, 728 F.3d at 1039 (quoting *In re Baker*, 693 F.2d 925, 927 (9th Cir. 1982) (per curiam)). As this Court has put it, the word "decisions," in statutory context, "means judicial decisions." *Brooks*, 208 F.2d at 22. While appealable "judicial" decisions are most commonly contrasted with non-appealable "administrative" acts, *see Ayestas*, 138 S. Ct. at 1090, the broader point is that Congress' grant of jurisdiction to review "decisions" must "be construed in the context of the usual work *of courts*" *qua* courts—i.e., "the *adjudication*" of cases and controversies. *In re Application for Exemption*, 728 F.3d at 1037 (emphasis added).

The limitation of § 1291's scope to *judicial* decisions in the proper sense—as opposed to decisions *by* district courts that are, nonetheless, essentially administrative or otherwise non-judicial—supports a conclusion that the District Court's referral order was not a "decision" (much less a "final decision") within § 1291's meaning, and therefore not appealable. Specifically, in this instance, the District Court was essentially acting not in "a *judicial* capacity," *Ayestas*, 138 S. Ct.

---

1880305), 2021 WL 147090 (discussing complexities around *Brooks*' status). But regardless of the vitality of *Brooks*' specific holding as to admissions denials (which present very different considerations than disciplinary referrals), *Brooks*' underlying principle—that only properly *judicial* decisions fall within § 1291's scope—is alive and well.

at 1089, but rather in the capacity of a *complainant*, whose submission may (or may not) lead to a case "prosecuted" by the Committee, and adjudicated by the Disciplinary Panel. *Cf. Complainant*, Black's Law Dictionary (11th ed. 2019).[24] Multiple factors support this conclusion.

First, the District Court did not *adjudicate* anything—at least not in any meaningful sense. *Cf. Standard Oil*, 449 U.S. at 241 (agency complaint finding "reason to believe" respondent violated law was not "definitive statement of position," but mere "threshold determination that further inquiry is warranted"). The District Court did not sanction Mr. Kaardal. *See* App. 2394; *cf.* Appellants' Br. 10 (noting as much). Nor, as discussed above, did it make any determinations or findings that Mr. Kaardal violated ethical rules. *See supra* p. 25. It did not authoritatively determine any party's legal rights or duties, and its decision did not bind anyone. While the District Court made certain suggestions about what factors the Committee "may" find relevant, the Committee is free to reject them. *See* D.D.C. Local Civ. R. 83.16(d)(3) (Committee may determine that a complaint is "insufficient on its face" and terminate further inquiry); *cf. Lucas*, 574 F.3d at 774-75 & n.1 (upon magistrate judge's referral, "the District Court Committee on

---

[24] This is in marked contrast to a court that imposes *sua sponte* sanctions—which serves "at once as both prosecutor *and judge*," *Lucas v. Duncan*, 574 F.3d 772, 775 (D.C. Cir. 2009) (emphasis added), and whose final orders imposing discipline are appealable.

Grievances . . . decided, after careful review, that no further action [was] warranted" (internal quotation marks omitted)).  As for the adjudication of whether violations *in fact* occurred and, if so, what sanctions to impose, that would occur in later Disciplinary Panel proceedings.  *Cf. United States v. McHugh*, 528 F.3d 538, 540 (7th Cir. 2008) (the "judicial Power" is "a power to make binding decisions, not to make suggestions" (internal quotation marks omitted)); *United States v. Pineyro*, 112 F.3d 43, 45 (2d Cir. 1997) (per curiam) ("non-binding recommendation" to Bureau of Prisons outside § 1291's scope).

Moreover, the only "decision" the District Court made, i.e., to submit a complaint to the Committee, was not an exercise of distinctively judicial power even under the Local Rules themselves.  The Local Rules allow "[a]ny person" to submit an attorney misconduct complaint to the Committee.  D.D.C. Local Civ. R. 83.16(d)(1).  (By contrast, only the District Court can actually impose sanctions, or even make authoritative findings that sanctionable conduct occurred.  *See supra* pp. 5-6.)  The fact that "[a]ny participant in the litigation, or member of the general public, has the right to bring allegations of lawyer misconduct" to the Committee, *Teaford*, 338 F.3d at 1181, triggering the same process of inquiry on the Committee's part, *see generally* D.D.C. Local Civ. R. 83.16(d), further supports the

conclusion that the District Court's referral order was not an appealable judicial decision within § 1291's contemplation.[25]

C.    Practical Considerations Favor The Exclusion Of District Court Disciplinary Referrals From § 1291's Scope.

Pragmatic considerations bolster the conclusion that Committee referrals are not the kind of "final decisions" Congress intended to be appealable. *Cf. Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1712 (2017) (Section 1291 must be "[c]onstru[ed] . . . in line with the[] reasons" and "objectives" behind it, including "preserv[ing] the proper balance between trial and appellate courts" and "promot[ing] the efficient administration of justice").

1.    *Holding That Disciplinary Referrals Are Appealable Final Decisions Would Hamper Sound Judicial Administration, Resulting In Piecemeal Appeals On Underdeveloped Records.*

Holding that disciplinary referrals are appealable would invite serious problems from the perspective of sound judicial administration.  Most obviously, attorneys would often be able to bring two separate appeals regarding substantially the same disciplinary "proceeding" and the same underlying complained-of conduct: one appeal to test the decision to submit a complaint to the Committee, and one appeal to test the Disciplinary Panel's ultimate merits resolution.  This would waste

---

[25] The Local Rules contain separate provisions for "Complaints Generally" and "Complaints by a Court or a Judge."  D.D.C. Local Civ. R. 83.16(d)(1), (2).  But there appears to be no material difference, except that the latter, unlike the former, need not be "subscribed and under oath or affirmed under the penalty of perjury."

judicial resources and "encroach[] upon the prerogatives" of the District Court (and the Committee) in managing attorney discipline inquiries. *Mohawk*, 558 U.S. at 106.

Even apart from the possibility of multiple appeals, immediate appeals from initial referrals would be administratively awkward and frequently wasteful. Committee proceedings regarding the very same allegations might (indeed, in the ordinary case, presumably would) remain ongoing while this Court considered the appeal from the initial referral.[26] In many instances, intervening Committee action would render appeals moot; in others, ongoing Committee investigations might bring to light new evidence—which this Court probably would lack access to—and potentially alter the issues. A system that invites parties to "jump the gun" and pursue an appeal while "parallel" proceedings on "the same issues" continue below has "little merit." *Jarkesy*, 803 F.3d at 30 (internal quotation marks omitted).

In addition, treating District Court disciplinary referrals as appealable decisions would risk "enfeebling judicial administration," *Cobbledick*, 309 U.S. at 325, by authorizing appeals where there is no sufficient record on appeal, or even any coherently definable "record" at all. *Cf.* Fed. R. App. P. 10. Although in some instances (as here) the District Court files an "order" stating its reasons for a

---

[26] It is possible the Committee would halt its inquiry once an appeal was filed (if the Committee became aware of it), but there is no apparent reason why it would have to. And a policy of "staying" Committee inquiries pending appeals from initial referrals would raise its own pragmatic concerns.

disciplinary referral on an existing court docket, the Local Rules do not require this approach.  Rather, "[a]ny court" or "judge" in the District of Columbia can make a referral by simply submitting a letter.  D.D.C. Local Civ. R. 83.16(d)(2); *cf.* Judith A. McMorrow et al., *Judicial Attitudes Toward Confronting Attorney Misconduct: A View from the Reported Decisions*, 32 Hofstra L. Rev. 1425, 1438 (2004) ("[T]here is no logical or structural reason why referrals to the appropriate disciplinary body must occur in a reported decision.").[27]  In some instances the complaint may not even be based on conduct in one underlying case with a defined record—for example, if the referral arises from conduct in several proceedings or outside of litigation.  All this is in marked contrast to appeals from final Disciplinary Panel decisions, in which a decision is entered on an attorney-grievance docket upon a coherently assembled record, no further proceedings would normally be contemplated during appeal, and the matter could be briefed in a traditional adversarial fashion.  *Cf. In re Robertson*, No. 19-5215 (D.C. Cir.) (pending appeal of Disciplinary Panel decision with adversarial briefing on behalf of the Committee).

While this Court could perhaps navigate these difficulties through a case-by-case approach—treating some referrals as appealable under § 1291 and others as non-appealable, based on contextual factors—such a case-by-case approach would

---

[27] Indeed, the District Court stated below that it would "refer the matter to the Committee via separate letter."  App. 2391.  That "separate letter" (assuming it was sent) was not filed on the District Court docket and is not before this Court.

44

run contrary to the oft-repeated maxim that "jurisdictional rules should be clear," *Lapides v. Bd. of Regents*, 535 U.S. 613, 621 (2002), and "administrative[ly] simpl[e]," *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *see also United States v. Sisson*, 399 U.S. 267, 307 (1970) ("Clarity is to be desired in any statute, but in matters of jurisdiction it is especially important.").[28]  All this counsels against treating disciplinary referrals *per se*—i.e., unaccompanied by other sanctions or explicit findings of misconduct—as appealable "final decisions."

> 2.    *The Risk Of Allowing Critical District Court Comments To Escape Appellate Review Does Not Support A Contrary Approach.*

Appellants might argue that practical considerations cut the other way, because a rule that referral orders like the one at issue here are non-appealable would render embarrassing, potentially reputation-damaging criticism by the District Court immune from appeal.  On examination, however, that objection is less weighty than it might seem.  As discussed above, a disciplinary referral effectively marks the initiation of a new proceeding that may result in (1) a final, adverse Disciplinary

---

[28] That is to say nothing of the bizarre incentives and arbitrary outcomes a case-by-case approach could create.  For example, suppose this Court decided that referral orders entered on case dockets were appealable but that no appeal can be had where a district judge simply submits a complaint by letter, after the fact, without entering anything on any docket.  This would essentially allow district judges blanket discretion to choose whether to make their referrals appealable.  And it would result in treating similarly situated attorneys differently based on more-or-less arbitrary features of a district judge's approach to submitting a referral.

Panel decision against the attorney, (2) a final *favorable* Disciplinary Panel decision that absolves the attorney, or (3) termination (without discipline) at a prior stage by the Committee. In the first of these three outcomes (adverse Disciplinary Panel decision), an appeal *is* available, and the only downside—postponing the attorney's opportunity to vindicate him- or herself in an appellate forum—is one that all parties routinely bear in ordinary litigation. In the second and third outcomes (favorable Disciplinary Panel decision or pre-decision termination without discipline), the attorney may indeed have no opportunity to seek review of negative statements made along the way, such as an initial referral order casting doubt on his or her professionalism. But while that is a real downside from the attorney's perspective, there is nothing anomalous about it: litigants routinely face precisely this situation— unfavorable but appeal-proof language in a lower court opinion.

"It is well established that in cases on appeal from the district court, [courts of appeals] are to review judgments, not opinions." *Harvey v. District of Columbia*, 798 F.3d 1042, 1056 (D.C. Cir. 2015) (internal quotation marks omitted); *accord Rooney*, 483 U.S. at 311. Parties are therefore often unable to secure appellate review of reputation-damaging statements or other "passages in the [lower] court's opinion that displease" them—even ones that may potentially "come back to haunt" them. *Abbs v. Sullivan*, 963 F.2d 918, 924 (7th Cir. 1992). That includes statements and even outright legal or factual determinations more damaging than the ones at

issue here. *See, e.g.*, *Sexual Minorities Uganda v. Lively*, 899 F.3d 24, 29-32 & n.1 (1st Cir. 2018) (refusing to review district court's "suggest[ion] that [defendant] 'aided and abetted a vicious and frightening campaign of repression against LGBTI persons in Uganda' and that such actions amounted to 'violations of international law'" (quoting *Sexual Minorities Uganda v. Lively*, 254 F. Supp. 3d 262, 264 (D. Mass. 2017)); *see also Rooney*, 483 U.S. at 309-14 (refusing to decide whether California courts "erred in stating that [a] search . . . was unconstitutional"). This is a particularly common situation for parties that prevailed below, due to the rule that such parties ordinarily cannot appeal, *see, e.g.*, *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 664 n.2 (D.C. Cir. 2017),[29] but the principle is

---

[29] Indeed, it could be argued that *Sullivan* itself sits uncomfortably with the principle that prevailing parties cannot ordinarily appeal (which is independent of Article III standing). *See Camreta*, 563 U.S. at 703-04; *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333-34 (1980) (rule stems from "the statutes granting appellate jurisdiction and the historic practices of the appellate courts," not Article III). After all, the District Court panel in *Sullivan* "dismiss[ed] the charges" and "impose[d] [no] sanctions," *Sullivan*, 395 F.2d at 956, placing the respondent attorney in much the same position as any party that wins a case at the cost of a reputationally bruising opinion. *Cf., e.g.*, *Sexual Minorities Uganda*, 899 F.3d at 30. In *amicus*' view, the way to resolve this tension is to read *Sullivan* as tacitly holding what other circuits have subsequently made explicit: that a court's legal determination and declaration that an attorney "violated a specific rule of ethical conduct" operates as a "*per se* . . . sanction," akin to a formal reprimand or censure, *Talao*, 222 F.3d at 1138, and thus constitutes, as a matter of law, an adverse decision (not just adverse language). *See supra* pp. 19-20. That reasoning may be sound, but it cannot be extended to lesser critical remarks without doing serious violence to the "abecedarian rule that federal appellate courts review decisions, judgments, orders, and decrees—not opinions, factual findings, reasoning, or explanations." *Williams*, 156 F.3d at 90; *see also Bolte*, 744 F.2d at 572-73 (observing that to allow parties "subject to critical

more broadly applicable—as when appellate courts decline to reach one of two independent bases for a decision. *See, e.g.*, *United States v. Simpson*, 430 F.3d 1177, 1184-85 & n.8 (D.C. Cir. 2005). In sum, there is nothing unusual about critical or otherwise adverse comments by the District Court potentially being rendered "appeal-proof," depending on the vicissitudes of further proceedings; on the contrary, it is common. *Cf. Williams*, 156 F.3d at 92 ("Bearing the burden of a judge's unflattering remarks traditionally has been among the rigors associated with trial practice.").[30]

D.    The Foregoing Analysis Is Consistent With Precedent From Other Circuits.

As discussed above, those courts that have addressed the issue have held that they lack jurisdiction over appeals of attorney disciplinary referrals where, as here, the referral is not accompanied by tangible sanctions or a determination that the attorney *actually* (not just *potentially*) committed sanctionable violations. *See supra*

---

comments by a district judge" to appeal whenever "they could show it might lead to a tangible consequence" would constitute "a breathtaking expansion in appellate jurisdiction").

[30] In extraordinary circumstances, mandamus might be also available as an alternative path to appellate-court oversight of initial referral orders, insofar as early intervention by this Court might be warranted in aid of its appellate jurisdiction over either the underlying litigation or any final Disciplinary Panel decision. *See Williams*, 156 F.3d at 92-93; *see also Nisus*, 497 F.3d at 1321-22; *Baker Grp.*, 451 F.3d at 491; *cf.* 28 U.S.C. § 1651(a). Appellants have not invoked this Court's mandamus power as an alternative basis for reaching the merits. *Cf. supra* p. 32 n.17.

pp. 20-21 & n.8 (citing cases). Holding that the referral order here was not a "final decision" under § 1291 would be consistent with those cases. (And a contrary decision concluding that this Court does have jurisdiction over such appeals would, at minimum, be in significant tension with them.)

Some courts have allowed appeals of orders in which a district court *both* made an express determination that the attorney violated ethical rules *and* referred the attorney to disciplinary authorities—notably the Third Circuit in *Adams v. Ford Motor Co.*, 653 F.3d at 305-06 (allowing appeal of order "conclu[ding] that [attorney] violated" specific ABA rule and also "referr[ing] the matter to the Virgin Islands Bar Association"),[31] and the Second Circuit in *In re Goldstein*, 430 F.3d at 111-12 (allowing appeal of referral accompanied by "explicit[] conclu[sion] that [attorney] was in violation of various disciplinary rules"). This Court need not answer the question whether the District Court's referral order would have been appealable if it had determined that Mr. Kaardal's conduct *did* (not just *may have*) run afoul of governing rules of professional conduct. But it bears noting that the conclusion *amicus* advocates—that a disciplinary referral, without more, is not an appealable final decision under § 1291—is readily reconcilable with an affirmative answer to that question, and with the rationale of *Adams* and *Goldstein*.

---

[31] At the time *Adams* was decided, "the ABA Model Rules governed the conduct of Virgin Islands attorneys." *In re Kershaw*, 70 V.I. 859, 862-63 (2019) (per curiam).

49

The basic logic of *Sullivan*, even if not fully stated in the Court's opinion, appears to be that an authoritative judicial determination that an attorney violated specific ethical rules is *in itself* an appealable adverse decision, functionally equivalent to a reprimand or censure. *See supra* pp. 19-20. (If that were not the case, Sullivan would have been a prevailing party—the charges against him were dismissed—and he could not have appealed just because he took issue with the language or reasoning that accompanied the District Court's decision to dismiss the charges against him. *See supra* pp. 46-48 & n.29; *cf. also Williams*, 156 F.3d at 89 (appeal of "findings" could be cognizable only if "the findings, simpliciter, comprise a decision" within the meaning of jurisdictional statute).) And it is on the basis of that reasoning that *Adams* and *Goldstein* were decided: they held that the orders on review were appealable because, at least in the circumstances presented, an explicit "finding of attorney misconduct . . . constitute[d] a 'sanction.'" *Adams*, 653 F.3d at 305-06; *see Goldstein*, 430 F.3d at 111-12 (distinguishing *Teaford* and explaining that referral, when combined with an "explicit[] conclu[sion] that [the attorney] was in violation of various disciplinary rules" "was in the nature of a sanction").

While *Goldstein* and *Adams* may have treated the accompanying disciplinary referral as a "plus factor" of sorts, the explicit findings of specific rule violations were central, and necessary, to their holdings. *See Zente*, 789 F.3d at 605 (*Adams* "primarily relied on the express finding of misconduct in concluding that there was

50

an appealable sanction"); *Keach*, 593 F.3d at 224 (explaining that *Goldstein* rested on presence of "specific findings of misconduct").  But here—unlike in *Goldstein*, *Adams*, and *Sullivan*—the District Court did not find any rule violations and expressly declined to impose discipline.  *See supra* p. 25.

Thus, if this Court were faced with a case presenting facts similar to *Goldstein* or *Adams*, it could reach the same outcome as the Second and Third Circuits did in those cases.  By contrast, a decision not to dismiss this appeal for lack of jurisdiction would result in serious tension with Fifth and Tenth Circuit precedent.  *See Zente*, 789 F.3d at 604-06; *Teaford*, 338 F.3d at 1181-83.

## **CONCLUSION**

In *amicus*' view, the appeal should be dismissed.


Date: September 28, 2021                    Respectfully submitted,


                                            */s/ Matthew X. Etchemendy*
                                            Matthew X. Etchemendy
                                            Jeremy C. Marwell
                                            Vinson & Elkins LLP
                                            2200 Pennsylvania Avenue, NW
                                            Suite 500 West
                                            Washington, DC  20037
                                            Phone: 202.639.6740
                                            Email: metchemendy@velaw.com
                                            Email: jmarwell@velaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7), D.C. Cir. R. 28(c), and D.C. Cir. R. 29, because this brief contains 12,949 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.


Date: September 28, 2021          */s/ Matthew X. Etchemendy*
                                 Matthew X. Etchemendy
                                 Vinson & Elkins LLP
                                 2200 Pennsylvania Avenue, NW
                                 Suite 500 West
                                 Washington, DC  20037
                                 Phone: 202.639.6740
                                 Email: metchemendy@velaw.com

# ADDENDUM

# Statutes and Rules

## ADDENDUM TABLE OF CONTENTS

**Page**

**Statutes:**

28 U.S.C. § 1291 ................................................................................. A-1

**Rules:**

D.D.C. Local Civ. R. 83.12 ................................................................ A-3

D.D.C. Local Civ. R. 83.13 ................................................................ A-3

D.D.C. Local Civ. R. 83.14 ................................................................ A-4

D.D.C. Local Civ. R. 83.15 ................................................................ A-5

D.D.C. Local Civ. R. 83.16 ................................................................ A-7

Sec.

AMENDMENTS

1996—Pub. L. 104–331, §3(a)(2), Oct. 26, 1996, 110 Stat. 4069, added item 1296.

1984—Pub. L. 98–620, title IV, §402(29)(C), Nov. 8, 1984, 98 Stat. 3359, struck out item 1296 "Precedence of cases in the United States Court of Appeals for the Federal Circuit".

1982—Pub. L. 97–164, title I, §127(b), Apr. 2, 1982, 96 Stat. 39, added items 1295 and 1296.

1978—Pub. L. 95–598, title II, §236(b), Nov. 6, 1978, 92 Stat. 2667, directed the addition of item 1293, "Bankruptcy appeals", which amendment did not become effective pursuant to section 402(b) of Pub. L. 95–598, as amended, set out as an Effective Date note preceding section 101 of Title 11, Bankruptcy.

1961—Pub. L. 87–189, §4, Aug. 30, 1961, 75 Stat. 417, struck out item 1293 "Final decisions of Puerto Rico and Hawaii Supreme Courts".

## § 1291. Final decisions of district courts

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

(June 25, 1948, ch. 646, 62 Stat. 929; Oct. 31, 1951, ch. 655, §48, 65 Stat. 726; Pub. L. 85–508, §12(e), July 7, 1958, 72 Stat. 348; Pub. L. 97–164, title I, §124, Apr. 2, 1982, 96 Stat. 36.)

HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §§225(a), 933(a)(1), and section 1356 of title 48, U.S.C., 1940 ed., Territories and Insular Possessions, and sections 61 and 62 of title 7 of the Canal Zone Code (Mar. 3, 1911, ch. 231, §128, 36 Stat. 1133; Aug. 24, 1912, ch. 390, §9, 37 Stat. 566; Jan. 28, 1915, ch. 22, §2, 38 Stat. 804; Feb. 7, 1925, ch. 150, 43 Stat. 813; Sept. 21, 1922, ch. 370, §3, 42 Stat. 1006; Feb. 13, 1925, ch. 229, §1, 43 Stat. 936; Jan. 31, 1928, ch. 14, §1, 45 Stat. 54; May 17, 1932, ch. 190, 47 Stat. 158; Feb. 16, 1933, ch. 91, §3, 47 Stat. 817; May 31, 1935, ch. 160, 49 Stat. 313; June 20, 1938, ch. 526, 52 Stat. 779; Aug. 2, 1946, ch. 753, §412(a)(1), 60 Stat. 844).

This section rephrases and simplifies paragraphs "First", "Second", and "Third" of section 225(a) of title 28, U.S.C., 1940 ed., which referred to each Territory and Possession separately, and to sections 61 and 62 of the Canal Zone Code, section 933(a)(1) of said title relating to jurisdiction of appeals in tort claims cases, and the provisions of section 1356 of title 48, U.S.C., 1940 ed., relating to jurisdiction of appeals from final judgments of the district court for the Canal Zone.

The district courts for the districts of Hawaii and Puerto Rico are embraced in the term "district courts of the United States." (See definitive section 451 of this title.)

Paragraph "Fourth" of section 225(a) of title 28, U.S.C., 1940 ed., is incorporated in section 1293 of this title.

Words "Fifth. In the United States Court for China, in all cases" in said section 225(a) were omitted. (See reviser's note under section 411 of this title.)

Venue provisions of section 1356 of title 48, U.S.C., 1940 ed., are incorporated in section 1295 of this title.

Section 61 of title 7 of the Canal Zone Code is also incorporated in sections 1291 and 1295 of this title.

In addition to the jurisdiction conferred by this chapter, the courts of appeals also have appellate jurisdiction in proceedings under Title 11, Bankruptcy, and jurisdiction to review:

(1) Orders of the Secretary of the Treasury denying an application for, suspending, revoking, or annulling a basic permit under chapter 8 of title 27;

(2) Orders of the Interstate Commerce Commission, the Federal Communications Commission, the Civil Aeronautics Board, the Board of Governors of the Federal Reserve System and the Federal Trade Commission, based on violations of the antitrust laws or unfair or deceptive acts, methods, or practices in commerce;

(3) Orders of the Secretary of the Army under sections 504, 505 and 516 of title 33, U.S.C., 1940 ed., Navigation and Navigable Waters;

(4) Orders of the Civil Aeronautics Board under chapter 9 of title 49, except orders as to foreign air carriers which are subject to the President's approval;

(5) Orders under chapter 1 of title 7, refusing to designate boards of trade as contract markets or suspending or revoking such designations, or excluding persons from trading in contract markets;

(6) Orders of the Federal Power Commission under chapter 12 of title 16;

(7) Orders of the Federal Security Administrator under section 371(e) of title 21, in a case of actual controversy as to the validity of any such order, by any person adversely affected thereby;

(8) Orders of the Federal Power Commission under chapter 15B of title 15;

(9) Final orders of the National Labor Relations Board;

(10) Cease and desist orders under section 193 of title 7;

(11) Orders of the Securities and Exchange Commission;

(12) Orders to cease and desist from violating section 1599 of title 7;

(13) Wage orders of the Administrator of the Wage and Hour Division of the Department of Labor under section 208 of title 29;

(14) Orders under sections 81r and 1641 of title 19, U.S.C., 1940 ed., Customs Duties.

The courts of appeals also have jurisdiction to enforce:

(1) Orders of the Interstate Commerce Commission, the Federal Communications Commission, the Civil Aeronautics Board, the Board of Governors of the Federal Reserve System, and the Federal Trade Commission, based on violations of the antitrust laws or unfair or deceptive acts, methods, or practices in commerce;

(2) Final orders of the National Labor Relations Board;

(3) Orders to cease and desist from violating section 1599 of title 7.

The Court of Appeals for the District of Columbia also has jurisdiction to review orders of the Post Office Department under section 576 of title 39 relating to discriminations in sending second-class publications by freight; Maritime Commission orders denying transfer to foreign registry of vessels under subsidy contract; sugar allotment orders; decisions of the Federal Communications Commission granting or refusing applications for construction permits for radio stations, or for radio station licenses, or for renewal or modification of radio station licenses, or suspending any radio operator's license.

Changes were made in phraseology.

AMENDMENTS

1982—Pub. L. 97–164, §124, inserted "(other than the United States Court of Appeals for the Federal Circuit)" after "The court of appeals" and inserted provision that the jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

1958—Pub. L. 85–508 struck out provisions which gave courts of appeals jurisdiction of appeals from District Court for Territory of Alaska. See section 81A of this title which establishes a United States District Court for the State of Alaska.

1951—Act Oct. 31, 1951, inserted reference to District Court of Guam.

EFFECTIVE DATE OF 1982 AMENDMENT

Amendment by Pub. L. 97–164 effective Oct. 1, 1982, see section 402 of Pub. L. 97–164, set out as a note under section 171 of this title.

EFFECTIVE DATE OF 1958 AMENDMENT

Amendment by Pub. L. 85–508 effective Jan. 3, 1959, on admission of Alaska into the Union pursuant to Proc. No. 3269, Jan. 3, 1959, 24 F.R. 81, 73 Stat. c.16 as required by sections 1 and 8(c) of Pub. L. 85–508, see notes set out under section 81A of this title and preceding section 21 of Title 48, Territories and Insular Possessions.

TERMINATION OF UNITED STATES DISTRICT COURT FOR THE DISTRICT OF THE CANAL ZONE

For termination of the United States District Court for the District of the Canal Zone at end of the ''transition period'', being the 30-month period beginning Oct. 1, 1979, and ending midnight Mar. 31, 1982, see Paragraph 5 of Article XI of the Panama Canal Treaty of 1977 and sections 2101 and 2201 to 2203 of Pub. L. 96–70, title II, Sept. 27, 1979, 93 Stat. 493, formerly classified to sections 3831 and 3841 to 3843, respectively, of Title 22, Foreign Relations and Intercourse.

### § 1292. Interlocutory decisions

(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

(2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property;

(3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

(c) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

(1) of an appeal from an interlocutory order or decree described in subsection (a) or (b) of this section in any case over which the court would have jurisdiction of an appeal under section 1295 of this title; and

(2) of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting.

(d)(1) When the chief judge of the Court of International Trade issues an order under the provisions of section 256(b) of this title, or when any judge of the Court of International Trade, in issuing any other interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

(2) When the chief judge of the United States Court of Federal Claims issues an order under section 798(b) of this title, or when any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

(3) Neither the application for nor the granting of an appeal under this subsection shall stay proceedings in the Court of International Trade or in the Court of Federal Claims, as the case may be, unless a stay is ordered by a judge of the Court of International Trade or of the Court of Federal Claims or by the United States Court of Appeals for the Federal Circuit or a judge of that court.

(4)(A) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States, the District Court of Guam, the District Court of the Virgin Islands, or the District Court for the Northern Mariana Islands, granting or denying, in whole or in part, a motion to transfer an action to the United States Court of Federal Claims under section 1631 of this title.

(B) When a motion to transfer an action to the Court of Federal Claims is filed in a district court, no further proceedings shall be taken in the district court until 60 days after the court has ruled upon the motion. If an appeal is taken from the district court's grant or denial of the motion, proceedings shall be further stayed until the appeal has been decided by the Court of Appeals for the Federal Circuit. The stay of proceedings in the district court shall not bar the granting of preliminary or injunctive relief, where appropriate and where expedition is rea-

# LCvR 83.12

## RULES OF DISCIPLINARY ENFORCEMENT

**(a)**    **PROMULGATION OF RULES.**

This Court, in furtherance of its inherent power and responsibility to supervise the conduct of attorneys who are admitted to practice before it under LCvR 83.2 or 83.8 of these Rules, or who are admitted for the purpose of a particular proceeding (pro hac vice), or who otherwise appear before the Court, promulgates the following Rules of Disciplinary Enforcement superseding all of its other Rules pertaining to disciplinary enforcement heretofore promulgated. These Rules shall become effective on May 1, 1987, provided however, that any formal disciplinary proceeding then pending before this Court shall be concluded under the procedure existing prior to the effective date of these Rules.

**(b)**    **ATTORNEY SUBJECT TO RULES.**

These Rules shall apply to all attorneys admitted to membership in the Bar of this Court, to all attorneys permitted to practice before this Court under LCvR 83.2, and to all attorneys who appear before this Court or who participate in proceedings, whether admitted or not. All attorneys to whom these Rules apply shall be subject to the disciplinary jurisdiction of this Court for any alleged misconduct arising in connection with such proceeding. All such attorneys shall also be deemed thereby to have designated the Clerk of the Court as agent for service of process under these Rules governing discipline and disciplinary proceedings.

*COMMENT TO LCvR 83.12: Section (a) incorporates the former Preamble to the Rules of Disciplinary Enforcement. Section (b) was added to make clear that the Court has authority to discipline all attorneys who appear before it, whether admitted or not. Because this Rule is broader in its application than either LCvR 83.2 or 83.8, it restates the provision that all attorneys subject to these Rules shall be deemed to have designated the Clerk of the Court as agent for service of process for purpose of the disciplinary rules.*

# LCvR 83.13

## DISCIPLINARY PANEL

**(a)**    **APPOINTMENT.**

The Chief Judge shall appoint three judges of the Court to be known as the Disciplinary Panel and shall appoint two additional judges to serve as alternate members. The Disciplinary Panel shall have jurisdiction over all judicial proceedings involving the disbarment, suspension, censure or other discipline of attorneys subject to these Rules.

**(b)**     **POWERS OF INDIVIDUAL JUDGES.**

Nothing contained in these Rules shall be construed to deny to this Court or to any individual judge or United States Magistrate Judge thereof or to the United States bankruptcy judge such powers as are necessary for the Court to maintain control over proceedings conducted before it, such proceedings for contempt under Title 18 of the United States Code or under Rule 42 of the Federal Rules of Criminal Procedure, or to deprive any judge or magistrate judge of his/her inherent power of discipline for conduct committed in the presence of the Court.

*COMMENT TO LCvR 83.13:  Section (b) makes clear the power of an individual judge, bankruptcy judge or magistrate judge, to maintain control over proceedings through the contempt power or otherwise to discipline for conduct in the presence of the Court.*

## LCvR 83.14

## COMMITTEE ON GRIEVANCES

**(a)**     **APPOINTMENT.**

There shall be established a standing committee appointed by the Court to be known as the Committee on Grievances (the "Committee") consisting of six or more members of the Bar of this Court appointed for terms of three years and until their successors have been appointed.  The terms of the members shall be staggered so as to provide continuity. No member of the committee on Grievances shall serve more than two consecutive terms.

The Court shall designate a Chair of the Committee and a Vice Chair who shall act in the absence or disability of the Chair.  Members of the Committee shall serve without compensation except that the Court may authorize payments in lieu of expenses from fees collected by the Clerk pursuant to LCvR 83.8(f).

**(b)**     **DUTIES.**

The Committee shall be charged with receiving, investigating, considering and acting upon complaints against all attorneys subject to these Rules, LCvR 83.12(b) relating to disbarment, suspension, censure, reprimand or other disciplinary action, and petitions for reinstatement of attorneys.

**(c)**     **CLERK.**

The Clerk shall with approval of the Court, appoint a Clerk to the Committee who shall have all powers vested in a Deputy Clerk of the Court.  The Clerk to the Committee shall assist the Committee, maintain records of its proceedings, investigations and prosecutions, and proceed as otherwise set forth in these Rules.

**(d)      CONFIDENTIALITY AND IMMUNITY.**

All proceedings before the Committee involving allegations of misconduct of an attorney and all documents and charges presented to the Committee shall remain confidential and privileged.  All formal charges prepared by the Committee and directed to be filed by the Court, attorney or grievance cases filed with the Clerk of the Court, court orders, and subsequent pleadings, answers or responses filed therein shall be matters of public records.

All meetings and hearings of the Committee shall be held in camera and the business conducted therein shall remain confidential and privileged.  The Committee's Chair or, in the Chair's absence or disability, the Vice Chair shall have discretion in determining the manner and extent of cooperating with disciplinary agencies from other jurisdictions.  All records and minutes of the Committee shall be maintained under seal and shall not be disclosed except by order or direction of the Chief Judge (or the designee of the Chief Judge).

When exercising the power delegated by the Court, Committee members shall be absolutely immune from suit for any conduct in connection with their duties.  Complaints submitted to the Committee on Grievances pursuant to LCvR 83.16 shall be absolutely privileged and no claim or action predicated thereon may be instituted or maintained.

***COMMENT TO LCvR 83.14: Section*** *(c) governs the responsibilities of the Clerk to the Committee.  The most important change is section (d) which is added to describe the practice of the Committee on Grievances and the Court relating to confidentiality and disclosure of disciplinary proceedings.  It clarifies existing practice by explicitly stating which proceedings are confidential and which are not.  The Rule does not bar disclosure of information by order of the Chief Judge or his/her designee in connection with judicial appointments.  In addition, consistent with rules of other courts and case law, the Rule provides that Committee members shall be immune from suit for conduct in the course of their duties in exercising the power delegated to the Committee members by the Court.*

# LCvR 83.15

# OBLIGATIONS OF ATTORNEYS

**(a)      RULES OF PROFESSIONAL CONDUCT.**

Violations of the Rules of Professional Conduct (as adopted by the District of Columbia Court of Appeals except as otherwise provided by specific Rule of this Court) by attorneys subject to these Rules shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship.

**(b)**    **DUTY TO NOTIFY THE COURT.**

It shall be the duty of each attorney subject to these Rules to notify promptly the Clerk of this Court of:

(1)    conviction of any crime other than minor traffic offenses, giving the name of the court in which the attorney was convicted, the date of conviction, docket number, the offense for which the attorney was convicted and the sentence;

(2)    any disbarment, suspension or other public discipline imposed by any federal, state or local court, giving the name of the court, the date of such disbarment, suspension or other public discipline, the docket number, and a description of the discipline imposed and the offense committed in connection therewith; or any disbarment by consent or resignation while an investigation into allegations of misconduct is pending;

(3)    whether the attorney has ever been held in contempt of court and, if so, the nature of the contempt and the final disposition thereof; and

(4)    any change in the attorney's office address or telephone number as provided for in (c) below.

Failure to provide the notice required by this paragraph may constitute a separate ground for discipline.

**(c)**    **CHANGES IN ADDRESS**

Notice to the Clerk of any change in the attorney's address or telephone number (see (b)(4) above) shall be filed in writing within 14 days of the change.  The attorney shall also within 14 days file a praecipe reflecting such change in each case which the attorney has pending before this Court, serving a copy upon each of the attorneys in these cases.

**(d)**    **DUTIES OF THE CLERK UPON NOTIFICATION.**

Upon being informed that an attorney subject to these Rules has been convicted of any crime, disciplined by any court, held in contempt by any court, disbarred by consent, or resigned from any Bar pending an investigation into allegations of misconduct, the Clerk shall promptly obtain a certified or exemplified copy of such conviction, disciplinary judgment or other court order and present it to the Committee which shall proceed in accordance with these Rules.

***COMMENT TO LCvR 83.15:*** *Section (b) combines several former Rules relating to an attorney's obligations under these Rules to notify the Court of certain facts: (1) conviction of crime; (2) disbarment, suspension or public discipline; (3) citation for contempt; (4) change in address or telephone number.  The duty of notification in LCvR 83.15(b) regarding public discipline does not include sanctions imposed under civil rules other than contempt as specified in subsection (b)(3).  Failure to provide notice may constitute grounds for disciplinary action.*

*Section (c) has been added to impose on the Clerk to the Grievance Committee the duty to obtain a certified or exemplified copy of such conviction, disciplinary judgment or court order.*

## LCvR 83.16

## GROUNDS AND PROCEDURES FOR DISCIPLINE

**(a)    SERVICE OF PROCESS.**

Service of process under these Rules shall be made by certified mail addressed to the attorney (hereinafter attorney or respondent) at the last known address or at the last recorded address filed with the Clerk of the Court as required pursuant to LCvR 83.8(g). If service cannot be so made, service shall be sufficient when served on the Clerk of this Court and all time periods specified in these Rules shall run from the time of such service.  If service is made by serving the Clerk, a courtesy copy shall be mailed to the respondent by first class mail at his/her last known address.

**(b)    ATTORNEYS CONVICTED OF CRIMES.**

**(1)    FELONIES.**

Upon presentation to the Disciplinary Panel of a certified copy of a court record demonstrating that an attorney subject to these Rules has been found guilty of a felony in any court, the attorney shall be immediately suspended from practicing before this Court by order of the Disciplinary Panel, whether the finding resulted from a plea of guilty or nolo contendere or from a verdict after trial or otherwise, and regardless of the pendency of an appeal.  The Disciplinary Panel may defer entry of the order or set aside an order of suspension when it appears to the Panel in the interest of justice to do so.

Upon presentation of proof that the conviction is final, and regardless of the pendency of an appeal or other review of the conviction or of a Petition for Writ of Certiorari, the respondent shall be disbarred and the attorney's name shall be struck from the roll of members of the Bar of this Court by order of the Disciplinary Panel, unless within a period of 30 days from the date of the order, the respondent shows cause why disbarment would not be in the interest of justice.

**(2)    MISDEMEANORS.**

An attorney subject to these Rules who shall be convicted in any court of a misdemeanor may be disciplined in such manner and to such extent as the Disciplinary Panel may determine and may upon petition of the Committee and

for good cause shown, be temporarily suspended pending a final decision of the Disciplinary Panel.

Upon receipt of a certified copy of such judgment of conviction, the Committee shall obtain an order from the Disciplinary Panel requiring the respondent to show cause within 30 days after service in accordance with LCvR 83.16(a) why the attorney should not be disciplined.  If the respondent files a timely Answer, the Committee shall have 30 days within which to file a response thereto if it so desires.  The Committee shall serve a copy of its response, if any, upon the respondent or respondent's counsel of record by first class mail or, failing that, in accordance with LCvR 83.16(a).

Upon the filing of the respondent's Answer to the Order to Show Cause and any response thereto by the Committee, or if no answer has been filed, upon the filing of a recommendation by the Committee, the matter shall be promptly submitted to the Disciplinary Panel for its consideration.  The Disciplinary Panel may, in its discretion, schedule a hearing.  If a hearing is scheduled, the Chair or designated member(s) of the Committee shall appear at the hearing and offer proof or arguments pertinent to the issues.  After the hearing or, if no hearing is scheduled, upon a review of the papers submitted, the Disciplinary Panel shall take such action as these Rules and justice may require.  In all proceedings hereunder the certified copy of judgment of conviction shall constitute conclusive proof of the respondent's guilt of the conduct for which the respondent was convicted.  The pendency of an appeal or other review of the conviction or of a petition for writ of certiorari will not constitute a ground for failing to proceed in accordance with this Rule absent extraordinary circumstances and for good cause shown.

**(3)    REINSTATEMENT FOLLOWING SUSPENSION.**

An attorney suspended under LCvR 83.16(b)(1) or (2) will be reinstated immediately upon the filing of a certificate demonstrating that the conviction has been reversed, vacated, or set aside, but the reinstatement will not terminate any formal disciplinary proceeding then pending against the attorney, the disposition of which shall be determined by the Committee on the basis of the available evidence.

**(c)    DISCIPLINE IMPOSED BY OTHER COURTS.**

**(1)    POLICY OF RECIPROCAL DISCIPLINE.**

An attorney subject to these Rules who has been suspended for more than 30 days or disbarred by another court shall be automatically suspended from practice in this Court.  The suspension shall be effective upon service of a Temporary Suspension and Show Cause Order in accordance with these Rules.  An attorney who has been suspended for 30 days or less by another court shall have the fact of that discipline noted by the Clerk on the Lawyer's Register maintained by this Court, and no further proceedings shall be had thereon, unless the Committee on Grievances shall determine that the facts underlying the discipline warrant a

proceeding for the imposition of discipline by this Court. Notations on the Lawyers' Register do not constitute discipline imposed by the Court and they shall be available only to the Court and to the Committee and shall not be matters of public record.

(2) **ISSUANCE OF TEMPORARY SUSPENSION AND SHOW CAUSE ORDER.**

Upon receipt of a certified or exemplified copy of a judgment or order from another court suspending or disbarring an attorney subject to these Rules the Disciplinary Panel of this Court shall issue a Temporary Suspension and, Show Cause Order, suspending the attorney from practice before this Court pending a final disposition under these Rules, except where it finds extraordinary circumstances. Respondent may answer and show cause within 30 days after service of the Order why the imposition of the identical discipline by the Court would be unwarranted and the reasons therefor.

(3) **DUTIES OF THE CLERK.**

The Clerk to the Committee thereupon shall cause to be served on the attorney the following documents: a copy of the judgment or order of discipline imposed by the other court; a certified copy of this Court's Temporary Suspension and Show Cause Order; and a copy of LCvR 83.16.

(4) **PROCEDURES WHEN RESPONDENT FAILS TO ANSWER.**

If a respondent fails to answer to show cause within 30 days from service of the Temporary Suspension and Show Cause Order, this Court shall issue an Order vacating the Temporary Suspension and Show Cause Order and imposing the identical discipline or such other discipline it deems appropriate, unless it finds that upon the face of the record on which the discipline by the other court is predicated it clearly appears:

(i)     that the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(ii)     that proof establishing the misconduct gives rise to a reasonable doubt that this Court could not, consistent with its duty, accept as final the conclusion of the disciplining court; or

(iii)     that the imposition of the same discipline by this Court would result in grave injustice; or

(iv)     that the misconduct established is deemed by this Court to warrant substantially different discipline; or

(v)     that the misconduct on which the discipline was imposed by the other court does not constitute misconduct in the District of Columbia

Where this Court determines that any of these elements exist, it shall enter such other order as it deems appropriate.

**(5)    PROCEDURES WHEN RESPONDENT ANSWERS.**

If the respondent files a timely Answer, the Committee shall have 30 days within which to file a response and make a recommendation to the Court. Upon consideration of the papers submitted by the respondent and by the Committee, the Court shall either (1) enter an Order vacating the Temporary Suspension and Show Cause Order and imposing the identical discipline or such other discipline it might find appropriate, or (2) if the Court finds that, upon the face of the record on which the discipline in another jurisdiction is predicated it clearly appears that one or more of the factors listed in subparagraphs (4)(i)-(v) exists, it shall enter such other order as it deems appropriate.

**(6)    CENSURE OR REPRIMAND.**

Where discipline imposed by the other court is a public censure or reprimand, the Clerk shall note the fact of that discipline on the Lawyers' Register maintained by this Court, and no further proceedings shall be had thereon. Notations on the Lawyers' Register do not constitute discipline imposed by this Court and they shall be available only to the Court and to the Committee and shall not be matters of public record.

**(7)    STAYS.**

If the discipline imposed by another court has been stayed, any reciprocal discipline proceeding in this Court may, upon motion of the respondent, be deferred by order of this Court until the stay expires and until further order of this Court. In the absence of a stay of discipline imposed by such other court, neither a motion for reconsideration or motion for rehearing or rehearing en banc filed in the other court or petition for a writ of certiorari will be the basis for a deferral of the proceedings in this Court absent good cause shown.

**(d)    COMPLAINTS OF MISCONDUCT FILED IN THIS COURT.**

**(1)    COMPLAINTS GENERALLY.**

Any person seeking to charge an attorney subject to the Rules with any act or omission which may justify disbarment, suspension, censure, reprimand or other discipline shall do so by a clear and concise written statement of facts in support of the allegations, subscribed and under oath or affirmed under the penalty of perjury pursuant to the United States Code, Title 28, Section 1746. The Complaint shall be presented to the Committee by lodging it with the Clerk to the Committee. The Committee shall have the inherent power without any formal Complaint to inquire into misconduct of attorneys subject to these Rules.

**(2)    COMPLAINTS BY A COURT OR A JUDGE.**

Any court, judge or United States magistrate judge in the District of Columbia may refer to the Committee the name of any attorney subject to these Rules on a Complaint that such attorney has engaged in conduct which, if substantiated, would warrant the imposition of discipline.

**(3)    INVESTIGATION.**

Complaints received by the Committee shall be reviewed to determine if the Complaint is appropriate for action.  If the Complaint is insufficient on its face to warrant investigation, the Committee may discharge the Complaint and advise the complainant that no action will be taken.  If the Committee decides that the Complaint or information otherwise received by the Committee requires action, the Committee is authorized to (1) investigate the matter itself; (2) refer the matter to the Office of Bar Counsel, the Board on Professional Responsibility, District of Columbia Court of Appeals; (3) informally seek information from the respondent; or (4) require a formal Answer from the respondent in accordance with subsection (d)(4).  To further any investigation, the Chair, or in his absence, the Vice Chair is authorized to issue subpoenas commanding the production of books, papers, documents, records or tangible items.  If following any of these actions the Committee decides no further action is warranted, the Committee may, if its investigation was based on receipt of a Complaint, discharge the Complaint and so inform the complainant and the respondent.  If the Committee's investigation was based on information otherwise received and the respondent was made aware by the Committee of its investigation, the Committee shall notify the respondent that it has decided that no further action is warranted.  The Committee may, as part of its notice to the respondent discharging the Complaint, provide an informal, non-reportable cautionary or educational statement, which shall not be considered discipline.

**(4)    SERVICE OF COMPLAINT; ANSWER.**

If the Committee determines that a formal Answer is required from the respondent, a copy of the Complaint as received by the Committee or as prepared by it based on information otherwise received shall be served upon the respondent and he/she shall be required to answer within 30 days after the date of service.  An Answer to a Complaint shall be in writing, subscribed and under oath or affirmed under the penalty of perjury in a form prescribed by the provisions of the United States Code, Title 28, Section 1746 and shall be accompanied by a list of all courts before which the respondent is admitted to practice.  Upon receipt of the Answer, the Clerk to the Committee shall mail a copy thereof to the complainant, if there is one, who may reply to the Answer within 14 days of the date of the transmittal letter from the Clerk of the Committee.  A copy of any reply to the Answer to the Complaint shall be served upon the respondent.  If a respondent is served with a copy of a Complaint by the Committee and fails to answer within the time allowed by these Rules, the matters shall be certified to the Disciplinary Panel for its appropriate action.

**(5)    SUBCOMMITTEE OF INQUIRY.**

The Chair may designate three members of the Committee to sit as a Subcommittee of Inquiry and shall designate one as Chair of the Subcommittee. The Chair of the Subcommittee of Inquiry is hereby designated and appointed a Master with authority to cause subpoenas to be issued commanding the attendance of witnesses and /or parties at any hearings, as well as commanding the production of books, papers, documents, records or tangible things designated therein at such hearing.  The Chair of the Subcommittee as such Master is further authorized to administer oaths to the parties and witnesses.  Should any witness and /or party fail or refuse to attend or to testify under oath, the witness' or party's name may be certified to the Disciplinary Panel of the Court, whereupon the Disciplinary Panel may refer the matter to the United States Attorney or the U.S. Department of Justice to bring formal criminal contempt charges against such witness and/or party for so refusing.  If the witness or party is found guilty of contempt, the Court shall administer such punishment as may be appropriate.

**(6)    RIGHT TO COUNSEL IN DISCIPLINARY PROCEEDINGS.**

The respondent shall be entitled to be represented by counsel who may appear on the respondent's behalf at any time during the investigation or after a Complaint has been served upon respondent.

**(7)    SUBMISSION OF CHARGES.**

If following investigation the Subcommittee of Inquiry recommends, and a majority of the Committee concurs, the Committee shall prepare charges and submit them to the Disciplinary Panel of the Court or, in its discretion with or without preparing charges refer the matter to the Office of Bar Counsel, the Board on Professional Responsibility, District of Columbia Court of Appeals with a request that that Office take whatever action it deems appropriate.  If submitted to the Disciplinary Panel and the Panel orders the charges to be filed, the Clerk shall file them and issue a summons directed to the respondent, commanding respondent to answer.  The summons and a copy of the charges shall be served in accordance with these Rules.  The respondent shall answer the charges within 30 days after the effective date of service and shall file with the Answer a list of all courts before which the attorney is admitted to practice.  If no Answer is received within 30 days or such additional time as the Disciplinary Panel may allow, the charges may be taken as admitted and the Disciplinary Panel may reprimand, censure, suspend, disbar or otherwise discipline the respondent by entering an appropriate order.

**(8)    HEARINGS AND ORDERS OF THE DISCIPLINARY PANEL OF THE COURT.**

When the respondent has filed an Answer, the case shall be set down for hearing before the Disciplinary Panel and a member of the Committee designated by the

Chairman shall appear at the hearing to offer proof or arguments pertinent to the issues. If the charges are sustained by clear and convincing evidence, the Disciplinary Panel may reprimand, censure, suspend, disbar or otherwise discipline the respondent by entering an appropriate order. Any knowing violation of the order of judgment shall be deemed a contempt of court.

**(e)    DISBARMENT ON CONSENT.**

**(1)    BY THIS COURT.**

Any attorney admitted to practice before this Court who is the subject of an investigation into, or a pending proceeding involving, allegations of misconduct may not resign from this bar, but may consent to disbarment. The attorney must deliver to this Court an affidavit stating that the attorney desires to consent to disbarment and that:

(i)    the attorney's consent is freely and voluntarily given; the attorney is not being subjected to coercion or duress; the attorney is fully aware of the implications of so consenting; and

(ii)    the attorney is aware that there is presently pending an investigation or proceeding involving allegations that there exist grounds for the attorney's discipline the nature of which the attorney shall specifically set forth.

Upon receipt of the required affidavit, the Disciplinary Panel shall enter an order disbarring the attorney. The order disbarring the attorney on consent shall be a matter of public record, but the affidavit shall be sealed and not be publicly disclosed or made available for use in any other proceeding except upon order of this Court.

**(2)    BY OTHER COURTS.**

An attorney admitted to practice before this Court who shall be disbarred on consent or who shall resign from the bar of any court of the United States or from the bar of any State, Territory, District, Commonwealth or Possession of the United States while an investigation into allegations of misconduct is pending, shall so advise this Court and submit a certified or exemplified copy of the judgment or order accepting such disbarment on consent or resignation. If no such order or judgment is submitted, the Clerk shall obtain it from the other court. The Disciplinary Panel thereupon shall enter an order disbarring the attorney and directing that the attorney's name be stricken from the roll of attorneys admitted to practice before this Court unless the attorney shows why it would not be in the interest of justice to do so. A certified or exemplified copy of the judgment or order accepting such disbarment on consent or resignation is conclusive proof of such disbarment on consent or resignation.

***COMMENT TO LCvR 83.16:*** *LCvR 83.16 outlines the grounds and procedures for discipline of: attorneys convicted of crimes; attorneys disciplined by other*

*courts; attorneys who are the subject of complaints of misconduct filed in this Court; and attorneys disbarred on consent.*

*Section (a) governs service of process in disciplinary proceedings. It makes clear that the primary method of service is by mail and the alternative method is by service on the Clerk of the Court.*

*Section (b) provides for immediate suspension upon proof of a felony conviction. The Disciplinary Panel may defer or set aside entry of the order in the interest of justice. This provision is to be invoked only in extraordinary circumstances. The Rule further provides for disbarment upon final conviction, regardless of the pendency of an appeal or other review, unless respondent shows cause within 30 days why disbarment would not be in the interest of justice.*

*With respect to misdemeanors, the Rule essentially maintains the show cause procedures in effect under former Rule 4-3(I)(b). With respect to both felonies and misdemeanors, the Rule makes clear that the pendency of an appeal or other review of conviction or of a petition for writ of certiorari does not affect the imposition of discipline. This provision was added to solve the recurring problem of a year or more delay attendant on petitions for certiorari, during which time the attorney might be permitted to practice before this Court.*

*Subsection (b)(3) has been added to provide for reinstatement after suspension upon proof that the underlying conviction has been reversed, vacated or set aside.*

*Section (c) governs discipline imposed by other courts and is a significant change from former Rule 4-3(II). The Rule provides that an attorney subject to these Rules who is suspended or disbarred by another court shall be suspended from practice in this Court during the pendency of disciplinary proceedings. The procedures adopted are consistent with the practice in the United States Supreme Court, many United States Court of Appeals and a number of other district courts. By providing the attorney an opportunity to show cause why reciprocal discipline should not be imposed, the Rule satisfies the due process requirements of the relevant Supreme Court cases. See, e.g., In Re Ruffalo, 390 U.S. 544 (1968); Theard v. United States, 354 U.S. 278 (1957); Selling v. Radford, 243 U.S. 46 (1917). The Rule corrects the inadequacies of the former show cause procedures that permitted a respondent to continue to practice during the pendency of disciplinary proceedings. The revised procedure requiring immediate temporary suspension followed by a Show Cause Order, shifts the burden of going forward to the respondent to show cause why identical reciprocal discipline should not be imposed.*

*The provision for suspension eliminates the procedure of noting short-term suspensions imposed by other courts on this Court's records, rather than imposing reciprocal discipline. Those procedures were unworkable and caused inequities. Under the new procedures, censures and reprimands will be noted, but reciprocal discipline proceedings will be followed in the case of all suspensions or disbarments.*

*Subsection (c)(7) makes clear that if discipline imposed by another court has been stayed, reciprocal discipline in this Court may be deferred. However, in the absence of a stay, neither a motion for reconsideration nor a motion for rehearing or rehearing en banc nor a petition for writ of certiorari serves to defer disciplinary proceedings in this Court absent good cause shown.*

*Subsection (d) sets forth in one section all the procedures relating to Complaints filed in this Court. Subsection (d)(1) This rule was modified to require that written complaints of misconduct contain a clear and concise statement of facts supporting the allegations made again attorneys. Subsection (d)(3) was amended to clarify that the Committee on Grievances may include an informal, non-reportable cautionary or educational statement as a part of a notice discharging a Complaint without further action.*

*Subsection (d)(7) provides that if a respondent fails to respond after a formal complaint is filed, the Disciplinary Panel has the power to take the allegations as admitted and impose appropriate discipline. Subsection (d)(8) sets forth the clear and convincing standard of proof for the imposition of discipline.*

*Section (e) governs disbarment on consent. It makes clear that there can be disbarment on consent in this Court or reciprocal disbarment for disbarment on consent by another court. It changes the former Rule by providing that an attorney under investigation or subject to pending proceedings involving allegations of misconduct may not resign from the Bar of this Court, but may only consent to disbarment.*

*Revised subsection (e)(1) governing disbarment on consent by this Court makes two substantive changes. First it permits the attorney affidavit, which is the predicate for disbarment on consent, to be filed under seal. Second, it eliminates the former requirement that an affidavit filed by an attorney seeking disbarment on consent contain an acknowledgment that the material facts alleged are true. This revision was adopted because it was felt that it was in the public interest to encourage consent disbarments.*

*With respect to disbarment on consent or resignation in other courts, subsection (e)(2) is changed only to the extent of providing the attorney an opportunity to show cause why such disbarment would not be in the interest of justice.*

***COMMENT TO LCvR 83.16(c)(1):** Typically, an order of suspension entered by the District of Columbia Court of Appeals by its terms is effective 30 days from the date of its entry. The Disciplinary Panel of this Court signs its Temporary Suspension and Show Cause Order after the effective date of suspension order in the other court.*

*Since a respondent has 30 days within which to answer an order to show cause in this Court, a short-term suspension by another court has often expired and a respondent automatically reinstated in the other court before the time an answer*

*is due in this Court.  Thus, no useful purpose is served by initiating reciprocal disciplinary proceedings in cases involving suspensions of 30 days or less.*

# LCvR 83.17

## NOTIFICATION TO DISCIPLINARY AUTHORITIES

**(a)**    **NOTIFICATION TO OTHER COURTS.**

When any person subject to these Rules has been convicted of any crime or disbarred, suspended, reprimanded, censured or disbarred on consent by this Court, the Clerk shall, within 10 days, transmit to the disciplinary authorities in any other jurisdictions or courts in which the attorney is admitted to practice, a certified copy of the conviction or a certified copy of the judgment or order of disbarment, suspension, reprimand, censure or disbarment on consent.  The Clerk shall also serve a certified copy of such judgment or order and a copy of such notice upon the respondent in accordance with LCvR 83.16(a).

**(b)**    **NOTIFICATION TO NATIONAL DISCIPLINE DATA BANK.**

The Clerk shall promptly notify the National Discipline Data Bank operated by the American Bar Association of any order imposing public discipline upon any attorney admitted to practice before this Court.

**COMMENT TO LCvR 83.17:** *LCvR 83.17 has been adopted from the Model Rules of Disciplinary Enforcement.  The purpose is to foster cooperation in reporting disciplinary actions.*

# LCvR 83.18

## REINSTATEMENT

**(a)**    **AFTER DISBARMENT OR SUSPENSION.**

An attorney suspended for a specific period shall be automatically reinstated at the end of the period upon the filing with the Court of an affidavit of compliance with the provisions of the order of suspension (including, in the case of reciprocal discipline, proof that the attorney has been reinstated by the court in which the attorney was disciplined.)  An attorney suspended for an indefinite period may not resume practice until the suspension is terminated by an order of the Disciplinary Panel.  A disbarred attorney may not resume practice until reinstated by order of the Disciplinary Panel.

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, I hereby certify that, on September 28, 2021, I electronically filed the foregoing *Brief of Court-Appointed* Amicus Curiae *Addressing Standing to Appeal* with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, and served copies of the foregoing via the Court's CM/ECF system on all ECF-registered counsel.

*/s/ Matthew X. Etchemendy*
Matthew X. Etchemendy
Vinson & Elkins LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC  20037
Phone: 202.639.6740
Email: metchemendy@velaw.com
