# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 2, 2021     Decided March 22, 2022

No. 21-5056

WISCONSIN VOTERS ALLIANCE, ET AL.,
APPELLEES

v.

KAMALA D. HARRIS, VICE PRESIDENT, IN HER OFFICIAL
CAPACITY AS PRESIDENT OF THE UNITED STATES SENATE,
ET AL.,
APPELLEES

ERICK G. KAARDAL AND MOHRMAN, KAARDAL & ERICKSON,
P.A.,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-03791)

*Channing L. Shor* argued the cause for appellants. With her on the briefs was *Justin M. Flint*.

*Matthew X. Etchemendy*, appointed by the court, argued the cause as *amicus curiae* to assist the court by addressing standing to appeal. With him on the brief was *Jeremy C. Marwell*, appointed by the court.

2

Before: TATEL, KATSAS, and JACKSON\*, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Roughly seven weeks after the 2020 presidential election, Republican state legislators, individual voters, and organizations representing voters from Wisconsin, Arizona, Georgia, Michigan, and Pennsylvania—all states carried by Joseph R. Biden Jr.—sued to prevent Congress from certifying their states' electoral results. The district court quickly denied the plaintiffs' motion to enjoin the counting of electoral votes, and then, after the Senate certified Biden as the winner, the plaintiffs voluntarily dismissed their case. In a post-dismissal order cataloguing the suit's "numerous shortcomings," the district court referred plaintiffs' counsel, Erick G. Kaardal, to the Committee on Grievances for possible discipline. *Wisconsin Voters Alliance v. Pence*, 2021 WL 686359, at \*1–2 (D.D.C. Feb. 19, 2021). "When any counsel seeks to target processes at the heart of our democracy," the district court reasoned, "the Committee may well conclude that they are required to act with far more diligence and good faith than existed here." *Id.* at \*2. Kaardal now appeals. But because the district court's referral is not a final order, we lack jurisdiction under 28 U.S.C. section 1291.

**I.**

To call the underlying action in this case ambitious would be an understatement. On December 22, 2020, just over two weeks before Congress was to certify the presidential election results, plaintiffs sued Vice President Pence, the U.S. House of Representatives, the U.S. Senate, the Electoral College, and a raft of state officials to prevent the counting of their states'

---

\* Circuit Judge Jackson was a member of the panel at the time the case was argued but did not participate in this opinion.

3

electoral votes. Invoking Article II of the Constitution, as well as the Equal Protection Clause and the Due Process Clause, plaintiffs argued that only state legislatures may certify Presidential electors. They sought judgments declaring numerous state and federal election laws unconstitutional and an injunction barring the Vice President and Congress from counting their states' electoral votes "in current and future elections" or, "[a]lternatively," an order requiring "the State Defendants' state legislatures to meet in their respective States to consider post-election certification of their respective Presidential electors." Compl. at 115.

The same day plaintiffs filed suit, they moved for a preliminary injunction to prevent the defendants from certifying state electors or counting their votes absent post-election certification from state legislatures. Denying that motion, the district court called "the legal errors underpinning this action manifold," pointing to several shortcomings: (1) the plaintiffs lacked standing; (2) the court appeared to lack personal jurisdiction over the defendants; and (3) the suit's Article II argument not only lay "somewhere between a willful misreading of the Constitution and fantasy," but also contravened two Supreme Court decisions. *Wisconsin Voters Alliance v. Pence*, 514 F. Supp. 3d 117, 120–21 (D.D.C. 2021). On top of that, the district court pointed out that, despite insisting that the suit was "'not about voter fraud,'" the complaint dedicated scores of pages to alleging voter fraud. *Id.* at 119 (quoting Compl. ¶ 44). These flaws, together with plaintiffs' failure to serve the defendants and the action's eleventh-hour timing, made it "difficult to believe that the suit [was] meant seriously," rather than as a "symbolic political gesture[]." *Id.* at 121. Accordingly, the district court stated it would "determine whether to issue an order to show cause why this matter should not be referred to its Committee on

4

Grievances for potential discipline of Plaintiffs' counsel," Erick G. Kaardal. *Id.* at 121–22.

Following Congress's certification of the electoral vote, plaintiffs voluntarily dismissed their suit, and the court ordered Kaardal to show cause why he should not be referred to the Committee on Grievances. Kaardal's several-hundred-page response failed to allay the court's concerns. In an order reiterating the suit's many flaws, the court concluded that it would "refer the matter to the Committee via separate letter so that it may determine whether discipline is appropriate." *Wisconsin Voters Alliance*, 2021 WL 686359, at *1. In doing so, the court "expresse[d] no opinion on whether discipline should be imposed or, if so, what form that should take." *Id.* at *2.

Kaardal now appeals and urges us to vacate the referral order, claiming that the district court "abused its discretion" by (1) issuing an order "based on an erroneous view of the law or a clearly erroneous assessment of the evidence," Appellants' Br. 14, and (2) announcing the decision to make the referral in a public, non-confidential proceeding, *id.* at 29–34. Given the unusual posture of this appeal, our court appointed Matthew X. Etchemendy as amicus curiae to address whether Kaardal has standing to appeal. He has ably discharged this duty, and we thank him for his assistance.

## II.

According to our amicus, although Kaardal has Article III standing, his appeal falls outside our statutory jurisdiction because the challenged order is neither final nor a judicial decision. Confident that the district court's referral order is non-final, thus depriving us of appellate jurisdiction, we leave our amicus's arguments about Article III standing and whether the order is a judicial decision for another day. *See Sinochem*

5

*International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 431 (2007) ("'[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999))).

28 U.S.C. section 1291 gives appellate courts jurisdiction over "appeals from all final decisions of the district courts of the United States." A decision is final only if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Cunningham v. Hamilton County*, 527 U.S. 198, 204 (1999) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 17, 521–22 (1988)).

Measured against this standard, the district court's referral order is non-final. Rather than "fixing [Kaardal's] rights and liabilities," the order merely initiates disciplinary proceedings. *McGourkey v. Toledo & O.C. Railway Co.*, 146 U.S. 536, 545 (1892). A referral to the Committee on Grievances neither determines whether an attorney will receive discipline nor what form that discipline may take. If the Committee deems a complaint potentially actionable, an investigation may ensue, either by the Committee or by the Office of Bar Counsel. Ultimately, the Office of Bar Counsel or the Disciplinary Panel, composed of three district court judges, decides whether an attorney should face punishment and, if so, what disciplinary measures are appropriate. Along the way to a final decision, there are multiple opportunities to discharge a complaint meriting no further action, and if the Disciplinary Panel reaches an adverse decision, the attorney may appeal to our court. *See, e.g.*, *Sullivan v. Committee on Admissions and Grievances*, 395 F.2d 954 (D.C. Cir. 1967); *accord.* Resp. to Pet. for Writ of Mandamus at 1, *In re Robertson*, No. 19-5075 (D.C. Cir. May 31, 2019). It is therefore far from clear what

6

liability Kaardal will ultimately incur, or indeed, whether he will receive any punishment at all.

In principle, the district court's referral order is no different from a run-of-the-mill agency order initiating an administrative investigation. Even though the administrative agency—the SEC, the FTC, the NLRB, etc.—has concluded that a corporation or individual may have violated federal law, its order initiating enforcement proceedings is nonreviewable. For example, in *FTC v. Standard Oil Co. of California*, the Supreme Court held that even though the Commission's complaint against Standard Oil initiated protracted adjudicatory proceedings that would subject the company to "the expense and disruption of defending itself," the complaint fell short of final agency action. 449 U.S. 232, 244 (1980). The court emphasized the harms that flow from premature judicial intervention: it "denies the agency an opportunity to correct its own mistakes and to apply its expertise" and "leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary." *Id.* at 242. To be sure, *Standard Oil* did not involve section 1291, but its logic still applies. Like an administrative complaint, the referral order identifies questionable conduct and initiates proceedings to investigate further. Intervening at this time could deny the Committee an opportunity to "apply its expertise" and, if Kaardal's disciplinary proceedings are dropped, "might prove to have been unnecessary." *Id.*

Kaardal insists that the "lack of jurisdiction for an appeal from a referral order [is] irrelevant" because he challenges the order as a "final adjudication of the merits of the *Show Cause Order*." Appellants' Reply Br. 6 (first quote); *id.* at 9 (second quote) (emphasis added). But even so construed, the referral order does nothing more than refer the matter to the Committee

7

on Grievances. It fixes neither Kaardal's rights nor obligations, so there is no final decision over which we have jurisdiction.

Kaardal's procedural challenge fares no better. He argues that the district court "circumvented the procedure set forth" in the applicable local rules when "it issued its [o]rder on the public record" instead of confining its concerns to a confidential letter to the Committee. Appellants' Br. 30–31. Setting aside the merits of this claim—it is unclear whether the confidentiality rules that Kaardal cites apply to a judge's referral decision, *see* LCvR 83.14(d)—Kaardal's challenge is essentially interlocutory, and we may hear interlocutory appeals only in limited circumstances, i.e., pursuant to one of the exceptions listed in 28 U.S.C. section 1292 or the collateral order doctrine. *See, e.g.*, *Swint v. Chambers County Commission*, 514 U.S. 35, 41–42 (1995); *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–46 (1949). Kaardal invokes neither.

For the foregoing reasons, the appeal is dismissed.

*So ordered.*